**ALLSTATE INSURANCE CO., Appellant,**

v.

**Johnnie W. DYKES, Appellee.**

**No. 527.**

Court of Civil Appeals of Texas, Tyler.

Dec. 17, 1970.

Rehearing Denied Jan. 14, 1971.

Charles H. Clark, Tyler, for appellant.

Ben E. Jarvis, Tyler, for appellee.

MOORE, Justice.

Appellee as insured instituted this action against appellant Allstate Insurance Company as insurer to recover the reasonable cash market value of a 1968 Pontiac Automobile alleged to have been stolen from him while his automobile theft policy was in full force and effect. Appellant answered with a general denial. Trial was before the court without a jury and resulted in a judgment for the insured, Johnnie W. Dykes, for the sum of $2,900.00 from which judgment this appeal was duly perfected.

The record is before us without the findings of fact or conclusions of law.

Appellant brings forward two points of error urging that the trial court erred in rendering judgment on the policy asserting that the evidence fails to show that any theft occurred. Appellant argues that the evidence is such as to conclusively show that the appellee sold and transferred the title to his automobile to the alleged thief, Jack Stephens, thus making him a part owner of the automobile. Hence appellant argues that the policy of insurance did not cover the loss allegedly sustained by the appellee because the alleged thief was the owner or part owner. Secondly, appellant argues that the policy did not cover the loss because at the time of the alleged theft, Jack Stephens, the alleged thief, owned equitable title and appellee held bare legal title. Hence appellant says that since the alleged thief was the owner of the equitable title there was no theft and hence the loss was not covered by the policy.

Under Coverage H(1) of the policy, appellant agreed to pay for any loss caused by "theft".

Appellee being in the armed services at the time of trial, his testimony was before the court by way of a deposition. His testimony as to his agreement with Jack Stephens is shown by the following questions: "Did you agree to sell your car to Jack Stephens." He answered, "Yes." In reply to the question, "When did you agree", he answered, "About two weeks before he went off with it and did not return it." The next question was "What consideration." He answered, "$3,500.00." He was then asked, "What terms." His answer was "Cash." He was then asked, "Was the sale subject to any condition? If so, what?" He replied, "That we would both use the car until I went into the Army about May, 1969." In reply to the question, "Did he make any payments" he answered, "No. He gave me $200.00 which I found out he had taken from my mother's Piggy Bank. I returned the money to my mother." He was also asked, "Did you authorize him to use the car or show it to any lender? If so, what was the agreement." He answered, "Yes. I let him take the automobile to a Bossier City, Louisiana Bank, to see about refinancing it. He was supposed to take it over there and let the banker look at it and then bring it back, immediately."

Margie Ruth Dykes, mother of appellee, testified that at the time her son agreed to sell the automobile, Stephens was a boarder in their home. According to her testimony, the agreement was that Stephens would purchase the automobile for $3,500.00 in cash which was to be paid prior to the time her son was to leave for the army. In the meantime she testified that it was agreed that Stephens would help make the monthly payments and that both Stephens and her son would use the automobile. She testified that Stephens helped make two monthly payments and that she, as well as Stephens and her son used the automobile; that Stephens attempted to refinance the automobile at the Arp State Bank but the bank refused his application for a loan. In the latter part of March, 1969, she testified that Stephens requested permission to take the automobile to Bossier City, Louisiana, for the purpose of obtaining the necessary financing. She further testified that her son had given her authority to allow Stephens to use the automobile; at the time Stephens requested permission to take it to Louisiana her son was at work; that she granted him permission to take it to Louisiana to see about the financing upon his promise to return the following day; that he did not return as promised, but called and said that it was necessary to have a dent in the fender repaired before the bank would finance it. She testified that as of the time of trial on March 3, 1970, neither Stephens nor the automobile had been seen or heard of since.

■ "Theft" when used in an insurance policy, as here, is to be given the same meaning it has under criminal law. Bomar v. Insurors Indemnity & Ins. Co., 150 Tex. 484, 242 S.W.2d 160 (1951); Hudiburg Chevrolet, Inc. v. Globe Indemnity Company, Tex., 394 S.W.2d 792.

"Theft", as defined by our Penal Code, Article 1410, Vernon's Ann.P.C., "is the fraudulent taking of corporeal personal property belonging to another from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking."

"Theft by false pretext" is defined by Article 1413 of the Penal Code, as follows:

"The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

Article 1417 provides:

"If the person accused of the theft be part owner of the property, the taking does not come within the definition of theft, unless the person from whom it is taken be wholly entitled to the possession at the time."

In defining the offense of "theft by bailee", Article 1429 of the Penal Code, provides:

"Any person having possession of personal property of another by virtue of a contract of hiring or borrowing, or other bailment, who shall without the consent of the owner, fraudulently convert such property to his own use with intent to deprive the owner of the value of the same, shall be guilty of theft, and shall be punished as for theft of light property."

■ As we view the record, the evidence shows without dispute that the parties contemplated that the sale of the automobile was to be for cash. A "cash" sale is one in which the contract calls for payment of the price in cash when the contract is made or the goods delivered. Until payment is made or waived, a contract for cash remains executory and title does not

pass. 50 Tex.Jur.2d, Sales, sec. 224, p. 606. There is nothing in the record showing that appellee ever executed or delivered to Stephens a certificate of title or any other written instrument indicating a transfer of any title, nor have we been able to find anything in the record which would indicate that appellee waived his right to insist upon cash prior to the delivery of possession. Stephens gained possession only because of his promise to secure the cash to pay for the automobile and not because he was a part owner thereof. Under these circumstances we think the record, as a matter of law, fails to show any ownership in Stephens. At any rate the question of whether a cash sale was contemplated and whether or not appellee subsequently waived his right to be paid in cash, constituted questions exclusively within the province of the trier of the fact. Victor Safe & Lock Co. v. Texas State Trust Co., 101 Tex. 94, 104 S.W. 1040; Continental Bank & Trust Co. v. Hartman, 129 S.W. 179 (Tex.Civ.App.). As stated, the record is before us without findings of fact or conclusions of law. Therefore we must presume, in support of the judgment, that the trial judge found that a cash sale was contemplated and that such was not waived by appellee if there is any evidence in the record to support such findings. Burns v. Wood, 427 S.W.2d 353 (Tex.Civ.App., Tyler, 1968, writ ref., n. r. e.). The record, in our opinion, contains ample evidence to support such findings.

We are, therefore, unable to agree with appellant's contention that Stephens acquired title and that no theft occurred because he was the owner or part owner. At most the evidence shows only an agreement whereby Stephens would be permitted to use the vehicle with appellee's permission. Appellee insists that the taking of the automobile under these circumstances constituted theft by bailee under Article 1429, supra, and therefore, constituted a loss protected by the policy. We think the contention must be sustained. If Stephens, at the time he obtained possession of the automobile, did not intend to appropriate it to his own use and benefit, but after getting possession, he formed such intent and did take and appropriate it, then his act constituted theft by bailee. However, if at the time he obtained possession he had already formed the intent to take and appropriate the automobile to his own use and benefit, and he accordingly obtained possession of the automobile by the fraudulent pretext that he wanted to take the same to Louisiana in order to get it refinanced, then his acts constituted theft by false pretext as denounced by Article 1413, supra. While there are no findings of fact showing whether the trial court determined the evil intent to have been conceived before or after the taking, the fact that the vehicle has not been seen or heard from in approximately a year makes it obvious that the evil intent was conceived at one time or the other so that in either event his taking the automobile under the facts was theft.

The judgment of the trial court is affirmed.