The STATE of Texas, Appellant,

v.

SOUTHWIND AUTO SALES, Appellee.

No. 04–96–00178–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 13, 1997.

Magda L. DeSalme, Assistant Criminal District Attorney, Civil Section, San Antonio, for Appellant.

Carl J. Kolb, McAmish, Socks & Kolb, P.C., San Antonio, for Appellee.

Before HARDBERGER, C.J., and LOPEZ and ANGELINI, JJ.

HARDBERGER, Chief Justice.

## INTRODUCTION

This appeal arises from a civil forfeiture proceeding. The State of Texas appeals a summary judgment entered in favor of Southwind Auto Sales (Southwind) as an "innocent owner," as well as a final judgment following a bench trial entered against the State awarding Southwind $4,000 on its counterclaim brought under Article I, Section 17 of the Texas Constitution for the taking of Southwind's vehicle. We affirm the summary judgment, reverse the final judgment on Southwind's counterclaim, and render judgment that Southwind take nothing on its counterclaim.

## FACTS

On August 24, 1994, the State instituted a forfeiture proceeding by filing an Original Notice of Seizure and Intended Forfeiture of a 1985 Cadillac. The State alleged that the vehicle seized was contraband in that it was used in an attempt to commit capital murder. The State named Southwind and three individuals—Homer L. Crawford, Regina McGowan, and Tyrone Adams—as respondents. The State contended that Southwind was an unperfected lienholder, Crawford was the last registered owner, McGowan may have had an ownership interest in the vehicle, and Adams used the vehicle in an attempt to commit capital murder as he attempted to strike a police officer with the vehicle on July 25, 1994 to evade arrest. Default judgments were entered as to respondents Crawford, Adams, and McGowan, from which they have not appealed.

As to ownership of the 1985 Cadillac, the last title certificate issued prior to July 25, 1994, the date of the crime in which the vehicle was used, was issued to Crawford. This certificate was issued on February 23, 1990. On June 27, 1994, Crawford assigned title to Gunn Oldsmobile. Three days later, on June 30, 1994, Southwind gave Gunn a three-day sight draft to purchase the Cadillac, and took delivery of the vehicle. That

same day, Southwind sold the Cadillac to McGowan and allowed her to take possession of the vehicle, contingent upon her providing Southwind with proof of liability and physical damage insurance. On July 1, 1994, Gunn assigned title to Southwind, when the sight draft was paid.

McGowan never provided Southwind with proof of insurance pursuant to the executory agreement she signed. McGowan retained possession for approximately twenty-five days before the crime was committed by Adams, who apparently lived with McGowan and was allowed free use of the vehicle. Because McGowan failed to provide proof of insurance, Southwind was preparing to repossess the vehicle by the time the crime was committed.

Southwind filed a motion for summary judgment in the forfeiture suit on March 15, 1995, asserting that it conclusively established its "innocent owner" defense. Two days later, on March 17, 1995, Southwind filed a counterclaim for damages and attorney's fees. The State answered the counterclaim and filed a response to Southwind's summary judgment motion. A hearing on the motion for summary judgment was held shortly thereafter, and the Honorable Frank Montalvo signed an order of partial summary judgment on May 16, 1995 sustaining Southwind's "innocent owner" defense and ordering that the State take nothing. On June 23, 1995, the State released the vehicle to Southwind. The vehicle was severely damaged, and was sold as salvage for $500.

On June 28, 1995, Southwind amended its counterclaim, alleging that the State was liable pursuant to Article I, Section 17 of the Texas Constitution for taking and/or damaging private property without compensation. A bench trial was held on October 3, 1995, and on November 13, 1995, the Honorable David A. Berchelman entered a judgment in favor of Southwind in the amount of $4,000, plus pre- and post-judgment interest. No findings of fact and conclusions of law were filed by the trial court, but the State has not asked this court for an abatement. The State filed a motion for new trial, which was denied, and timely perfected this appeal.

In twelve points of error, the State complains of the entry of summary judgment on Southwind's "innocent owner" defense, and asserts that the trial court erred in granting judgment in favor of Southwind on its counterclaim because (1) the State was immune from liability; (2) the trial court lacked jurisdiction; (3) no cause of action exists for inverse condemnation under chapter 59 of the Texas Code of Criminal Procedure; and (4) the evidence was legally and factually insufficient to establish that a compensable taking occurred, that the State was responsible for inverse condemnation of the vehicle, and that the State was responsible for any decrease in value in the vehicle.

## SUMMARY JUDGMENT ON "INNOCENT OWNER" DEFENSE

In its first two points of error, the State contends that the trial court erred in granting Southwind's motion for summary judgment because Southwind failed to show as a matter of law that it was an "innocent owner" that had perfected a security interest in the vehicle seized. To prevail on summary judgment, the movant must disprove at least one of the essential elements of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). This burden requires the movant to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether a material fact exists to preclude summary judgment, the evidence favoring the nonmovant is taken as true, and all reasonable inferences are indulged in favor of the nonmovant. *Id.; see also Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). Any doubt is resolved in favor of the nonmovant. *Nixon,* 690 S.W.2d at 548–49; *see also Doe,* 907 S.W.2d at 477.

■ A defending party may move for summary judgment based on an affirmative defense. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Hidalgo v. Surety Savs. & Loan Ass'n,* 462 S.W.2d 540, 545 (Tex.1971). A defendant moving for sum-

mary judgment upon an affirmative defense must prove conclusively each element of the defense as a matter of law. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). Once each element of an affirmative defense is conclusively established, the movant has met his burden and the burden of raising a disputed issue of material fact shifts to the nonmovant. *Palmer v. Enserch Corp.,* 728 S.W.2d 431, 435 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

In this case, Southwind moved for summary judgment on its "innocent owner" defense. To prevail on this affirmative defense, Southwind needed to show:

(1) that it acquired and perfected the interest before or during the act or omission giving rise to the forfeiture; and

(2) that it did not know or should not reasonably have known of the act or omission giving rise to the forfeiture or that it was likely to occur at or before the time of acquiring and perfecting the interest.

TEX.CODE CRIM. PROC. ANN. art. 59.02(c) (Vernon Supp.1997). The Texas Code of Criminal Procedure provides that if an owner or interest holder establishes these facts, its interest in property may not be forfeited. *Id.* An "Owner" is defined as "a person who claims an equitable or legal ownership interest in the property." *Id.* art. 59.01(6). The code defines an "Interest holder" as "the bona fide holder of a perfected lien or a perfected security interest in property." *Id.* art. 59.01(4).

■ Southwind claims that it established the first prong of the statutory test by demonstrating that the interest it acquired and perfected was that of an "owner" having legal title to the 1985 Cadillac. Southwind contends that, as such an owner, it was not required to establish that it had a perfected security interest in the property. We agree. Southwind's summary judgment evidence established that title was last assigned to Southwind, and that Southwind entered into an agreement with Regina McGowan for sale of the vehicle to her, but title to the Cadillac was never transferred to McGowan because she failed to comply with the terms of the contract. The summary judgment evidence included the following: (1) a copy of a title certificate to the vehicle that was issued to Homer Crawford initially, but that was then assigned by Crawford to Gunn Olds, and by Gunn Olds to Southwind, with the assignments noted on the certificate of title; (2) a copy of the retail installment contract between Southwind and Regina McGowan, which required proof of liability insurance and physical damage coverage with specified deductibles; (3) a copy of the reassignment of title to McGowan and Application for Texas Certificate of Title for McGowan, which were never delivered or submitted; and (4) the affidavit of Felix Pasedez, proprietor of Southwind, stating that McGowan never provided proof of the required liability and physical-damage coverage. The affidavit of Pasedez also established that a licensed dealer may establish complete legal ownership of a vehicle held for resale by showing that title was assigned to it, even though a new title has not been issued registered in the dealer's name. Southwind argued that this evidence conclusively proved that it acquired title from Gunn by assignment and that neither legal nor equitable title was conveyed to McGowan thereafter because the sale to her was invalid due to her failure to establish proof of financial responsibility.

■ It is true that a dealer perfects legal title to a vehicle if he holds an executed assignment of title, even though the dealer is not shown as the "registered" owner on a certificate of title. *See First State Bank of Corpus Christi v. Austin,* 315 S.W.2d 390, 392 (Tex.Civ.App.—San Antonio 1958, writ ref'd) (noting that transfer of title upon prescribed form by dealer holding assignment of title would convey legal title to vehicle). The Texas Certificate of Title Act, as it existed at the time relevant to this forfeiture action, specifically exempted dealers from the requirement that a certificate of title be issued in the name of the owner prior to a sale. TEX.REV.CIV. STAT. ANN. art. 6687–1 § 27 (Vernon 1977) (amended 1995) (current version at TEX. TRANSP. CODE ANN. § 501.022 (Vernon Pamphlet 1997)). Accordingly, Southwind, by proving that it received an assignment of title to the vehicle from Gunn and that the subsequent sale to McGowan

was never finalized, established conclusively that it was the legal owner of the vehicle at the time of the forfeiture.

The State seems to argue that proving a perfected status as an *owner* is not enough to establish the "innocent owner" defense under the article 59 of the code of criminal procedure. The State contends that Southwind was required to show that it had a perfected *security interest* in the vehicle. While the State is correct that a party must note its security interest on the certificate of title to perfect that security interest, *see Motor Inv. Co. v. Knox City,* 141 Tex. 530, 174 S.W.2d 482, 486 (Tex.1943), the State ignores Southwind's contention that it was an "owner" not an "interest holder" under the forfeiture statute. If Southwind was claiming that it was an interest holder, it would need to establish that it had perfected a *security* interest. However, because Southwind is claiming merely that it was an owner, Southwind need only establish that its *ownership* interest in the vehicle was perfected under the first prong of the statutory test.

■ In satisfaction of the second prong of the "innocent owner" defense, Southwind's summary judgment evidence established that it did not know and should not reasonably have known of the act or omission giving rise to the forfeiture, or that it was likely to occur at or before the time of acquiring and perfecting the interest. Felix Pasedez, Southwind's proprietor, stated in his affidavit that no employee of Southwind knew or had any reason to know that the vehicle would be used in the alleged crime, or that the crime was likely to occur on or before July 1, 1994, when Southwind acquired and perfected its ownership interest in the vehicle. In short, Southwind's summary judgment evidence conclusively established its ownership interest in the vehicle and its entitlement as a matter of law to summary judgment as an "innocent owner" under article 59 of the code of criminal procedure. We overrule the State's first two points of error and affirm the summary judgment entered by the trial court.

## SOUTHWIND'S COUNTERCLAIM

■ In point of error six, the State asserts that the trial court erred in granting judgment in favor of Southwind on its counterclaim because no cause of action for inverse condemnation exists under article 59 of the Texas Code of Criminal Procedure. "Condemnation is the process by which property of a private owner is taken for public use, without consent, but upon the payment of just compensation." *State v. Westgate, Ltd.,* 798 S.W.2d 903, 906 (Tex.App.—Austin 1990), *aff'd in part & rev'd in part on other grounds,* 843 S.W.2d 448 (Tex.1992). An action for inverse condemnation is an avenue of relief utilized by a property owner whose property has been taken for public use without due process or without proper condemnation proceedings, and who seeks to recover compensation for that loss. *City of Abilene v. Burk Royalty Co.,* 470 S.W.2d 643, 646 (Tex.1971).

■ Article I, Section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made." TEX. CONST. art. I, § 17. The purpose of the compensation requirement is to prevent the government from forcing private citizens to bear public burdens that, in all fairness, should be borne by the public as a whole. *Steele v. City of Houston,* 603 S.W.2d 786, 789 (Tex.1980); *see City of Austin v. Teague,* 570 S.W.2d 389, 394 (Tex.1978). Consequently, compensation is due when the government impairs the economic interest of an owner without distributing the cost impartially to the community, or when the owner is forced to bear a loss not common to the general public. *Teague,* 570 S.W.2d at 393–94; *see DuPuy v. City of Waco,* 396 S.W.2d 103, 107 (Tex.1965); *San Antonio River Auth. v. Garrett Bros.,* 528 S.W.2d 266, 274 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.).

■ A plaintiff is entitled to compensation even if the property is not destroyed or taken; it is sufficient to show that the property has been damaged. *Steele,* 603 S.W.2d at 790. As our Texas Supreme Court has noted, the language of Article I, Section 17

includes the word "damaged," which "is broader than that used in the former Constitutions of this state, and was doubtless intended to meet all cases in which, even in the proper prosecution of a public work, the right or property of any person, in a pecuniary way, may be injuriously affected." *Fort Worth Imp. Dist. No. 1 v. City of Fort Worth,* 106 Tex. 148, 158 S.W. 164, 168 (1913). Damaging property, as opposed to taking property, signifies that the property has been injuriously affected, and such damage is meant to include " 'every loss or diminution of what is a man's own.' " *Steele,* 603 S.W.2d at 790 (quoting *G., C. & S.F. Ry. Co. v. Fuller,* 63 Tex. 467 (1885)). Further, when access to the property is materially and substantially impaired, property has been damaged for a public use within the meaning of the constitution. *City of Waco v. Texland Corp.,* 446 S.W.2d 1, 2 (Tex.1969).

Southwind contends that the instant case is analogous to the situation considered by the Texas Supreme Court in *Steele v. City of Houston,* 603 S.W.2d 786 (Tex.1980). In *Steele,* the Texas Supreme Court considered whether a taking had occurred when police officers discharged incendiary materials into the plaintiff's home in an attempt to oust several escaped convicts who had taken refuge there. *Steele,* 603 S.W.2d at 788. The residence caught fire and was permitted to burn even after the Houston Fire Department arrived. *Id.* at 789. The court concluded that the case did not involve an eminent domain or inverse condemnation action, and appeared to consider the case as one involving merely damage to property. *Id.* In considering the plaintiffs' claim for destruction of their property, the court noted that not every damaging demands compensation. *Id.* at 790. Instead, compensation is limited to damage that arises out of or as an incident to some type of public works. *Id.* The court reversed and remanded the case to give the plaintiffs an opportunity to prove that the destruction was done "for or applied to public use," which the court noted could be established by proof that the city ordered destruction of the property in light of a public emergency. *Id.* at 792.

Southwind asserts that its claim, much like the plaintiffs' claim in *Steele,* alleges damage to its property, rather than merely appropriation of the property for government use. The supreme court sanctioned such a claim in *Steele,* and Southwind asks that we do the same in this case. Southwind contends that its vehicle was injuriously affected by the actions of the San Antonio Police Department, an agent of the State, and that its access to the vehicle was materially and substantially impaired. Moreover, Southwind argues that the damage to its vehicle arose out of or as an incident to the State's public work of seizing the vehicle as contraband. According to Southwind, requiring the State to compensate it in this case would further the purpose of the compensation requirement by distributing the cost impartially to the community rather than forcing Southwind to bear this loss not common to the general public.

The State argues that compensation is not appropriate in this case because no taking or inverse condemnation occurred. The State claims that police officers lawfully seized the vehicle as contraband and that the damage occurred while officers were attempting to avoid serious physical injury and/or death in the process of arresting a felon. Finally, the State contends that it should not be required to "repossess" vehicles for innocent owners without damaging the vehicles or being liable for the damage.

The United States Supreme Court considered the issue of whether forfeiture of a vehicle under a state statute is a taking of private property for public use as to an innocent owner. In *Bennis v. Michigan,* —— U.S. ——, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996), the State seized a vehicle owned by Mr. and Mrs. Bennis pursuant to a Michigan public nuisance statute after Mr. Bennis used the vehicle to engage in sexual activity with a prostitute. *Bennis,* —— U.S. at ——, 116 S.Ct. at 996. The trial court permitted no offset for Mrs. Bennis's interest, notwithstanding her lack of knowledge of her husband's activities. *Id.* at ——, 116 S.Ct. at 997. Mrs. Bennis appealed, claiming that she had no knowledge of her husband's activities and that her interest in the vehicle

should be protected. *Id.* In considering whether the forfeiture was a taking of private property for public use in violation of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, the Court noted that "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Id.* at ——, 116 S.Ct. at 1001. The Court concluded that the State should not be required to compensate Mrs. Bennis as an innocent owner for forfeiture of the vehicle. *Id.*

■ Although *Bennis* is distinguishable in that Michigan, unlike Texas, did not recognize an "innocent owner" defense by statute, and in that Southwind has alleged a violation of the Texas, rather than the federal, constitution, the supreme court's decision is instructive in this case. The counter-plaintiff's property in this case, like the plaintiff's property in *Bennis,* was lawfully seized pursuant to a state statute. As the Court noted in *Bennis,* when the government lawfully acquires property under authority other than the power of eminent domain, no compensation is required. *Id.* It follows that the State in this case should not be required to compensate Southwind for damage to the vehicle sustained during the lawful seizure of the vehicle. The question then becomes whether the State unlawfully retained the vehicle and should be liable for damages sustained during any unlawful retention.

■ While under most circumstances an innocent owner would be entitled to immediate return of a vehicle under the Texas statute and the State should be required to pay compensation for damage done during the period in which the vehicle is held against the rights of an innocent owner, Southwind's status as an innocent owner was subject to dispute in this case and a judicial determination was needed to confirm Southwind's entitlement to the vehicle. We have determined that summary judgment for Southwind was proper, as Southwind was an innocent owner, but the State was confused initially by the proposed sale to McGowen and the various assignments of title as to whether Southwind had perfected an interest under the statute. Indeed, the State continues to argue that Southwind was not an innocent owner. Under these circumstances, we cannot say that the State unlawfully held the vehicle until the date summary judgment was issued. Accordingly, because the State lawfully acquired and held the vehicle until a judicial determination was made that Southwind was an innocent owner under the forfeiture statute, the State should not be required to compensate Southwind for damage to the vehicle during this period. The evidence does not support a finding that any of the damage to the vehicle occurred after summary judgment was rendered, or that Southwind was unreasonably denied its right to regain possession of the vehicle after summary judgment was issued; thus, Southwind is entitled to no compensation under Article I, Section 17.

Although the result we reach today may seem unjust, our decision recognizes the precarious position in which the State would be left were we to hold otherwise. As the State points out in its brief, officers must act quickly to seize contraband, and often must take action to avoid serious physical injury and/or death in the process of arresting a felon and seizing property. The State should not be held liable for the damage it causes to contraband in the process of seizing it under such circumstances. With regard to any damage to the vehicle after it was impounded that may have been due to the State's failure to take necessary precautions, we do not hold today that an innocent owner may never recover for such damages. Indeed, an innocent owner that clearly establishes its right to contraband early on would be entitled to compensation under Article I, Section 17 for damages sustained during the period in which the State unlawfully holds the contraband. We do not have such a case here, though. Further, even in a situation such as this one in which contraband sustains damage while it is being held by the State pending judicial resolution of an innocent-owner dispute, the innocent owner may be entitled to compensation under a different theory of recovery. Southwind, however, pleaded only a violation of Article I, Section 17 in the

court below, and we will not consider the validity of additional causes of action in this appeal. In sum, although it should be a rare case in which innocent-owner status must await judicial determination, and in which no other theory of recovery outside Article I, Section 17 is viable and pleaded, we are faced with just such a case in this appeal and must hold that Southwind in entitled to no relief on its counterclaim. We sustain the State's sixth point of error to the extent that no action for inverse condemnation exists under article 59 of the code of criminal procedure under the unusual facts of this case. We do not hold, however, that such an action could not be maintained given a different set of facts.

Because our decision with regard to this point of error is dispositive of the State's appeal of the judgment on Southwind's counterclaim, we do not reach the State's remaining points of error. We affirm the partial summary judgment on Southwind's innocent-owner defense, reverse the final judgment on Southwind's counterclaim, and render judgment that Southwind take nothing on its counterclaim.