**THE FIRST NATIONAL BANK OF EL CAMPO, TEXAS, Appellant,**

v.

**Michael W. BUSS, Tiffany Riha, Anthony Ott and Faltisek Paving, Inc., Appellees.**

No. 13–02–210–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 27, 2004.

Ronald B. Collins, Duckett, Bouligny, & Collins, Attorneys At Law, El Campo, for Appellant.

Darryl W. Malone, Attorney At Law, Houston, for Appellees.

Before Justices HINOJOSA, CASTILLO, and CHAVEZ [1].

## OPINION

Opinion by Justice CASTILLO.

Appellant First National Bank of El Campo, Texas ("FNB") appeals a summary judgment in favor of appellees Michael Buss, Tiffany Riha, Anthony Ott, and Faltisek Paving, Inc. (collectively, the "Buyers"). By a single issue, FNB asserts that an automobile dealer's sale of inventory vehicles to the Buyers did not cut off its perfected lien on the inventory. We affirm.

### I. BACKGROUND

Greg Dota, d/b/a Greg's Auto Sales ("Dota"), is a used car dealer. On December 31, 1999, FNB renewed an existing floor-plan loan agreement with Dota to finance his inventory. Dota signed a "Se-

---

1. Retired Justice Melchor Chavez was assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp.2004). However, because Justice Chavez's appointment expired on August 31, 2003, he is not participating in this opinion.

curity Agreement and Financing Statement" that gave FNB a first lien on all current and subsequently acquired inventory he held on his used car lot. Under this floor-plan loan agreement, FNB retained possession of the original certificates of title for Dota's inventory of used vehicles. For each vehicle Dota sold, Dota was to apply the sales proceeds to the loan and arrange for the release of the original title from FNB.

Under section 501.111 of the Texas Transportation Code, a person perfects a security interest in a motor vehicle held as inventory by a person in the business of selling motor vehicles only by complying with chapter 9 of the Texas Business and Commerce Code. See TEX. TRANSP. CODE ANN. § 501.111(b) (Vernon 1999). FNB perfected its security interest in Dota's inventory by filing a UCC-1 with the Texas Secretary of State. FNB retained possession of the original certificates of title.

In a series of separate transactions, the Buyers each bought vehicles from Dota. They paid for the vehicles and took possession. Dota deposited the funds he received from the Buyers into his account at FNB. Dota did not give the Buyers certificates of title, which were held by FNB. The Buyers completed title applications, which they left with Dota. Dota was to complete the application process and obtain issuance of new certificates of title in the Buyers' names.

Meanwhile, Dota defaulted on his promissory note to FNB. FNB made demand on both Dota and the Buyers to return the vehicles. Dota filed bankruptcy. The Buyers filed suit against FNB, seeking: (1) a declaratory judgment that their purchases cut off FNB's security interest in the inventory; and (2) damages caused by FNB's refusal to release the certificates of title. FNB counterclaimed for a declaratory judgment that its lien was valid and superior to the Buyers' claims of ownership.

The Buyers did not dispute that FNB perfected its lien in Dota's inventory. FNB filed a motion for summary judgment, asking the trial court to rule on the validity of its lien. FNB contended that the Texas Certificate of Title Act (the "Act") governed the dispute and the parties' rights. See TEX. TRANSP. CODE ANN. § 501.001–501.138 (Vernon 1999 & Supp. 2004). On the other hand, the Buyers countered that the Texas Business and Commerce Code (the "Code") applied to the transactions. See, e.g., TEX. BUS. & COM.CODE ANN. § 1.201(9) (Vernon Supp. 2004) (defining buyer in ordinary course), § 2.401 (Vernon 1994) (effect of passing of title), § 2.403 (Vernon 1994) (power to transfer), § 9.315(a) (Vernon 2002) (secured party's rights on disposition of collateral; formerly § 9.306); § 9.320(a) (Vernon 2002) (buyers of goods; formerly § 9.307).[2] The trial court denied FNB's

**2.** In 1999, the legislature substantially revised Chapter 9 of the business and commerce code (the "UCC"). See Act of May 12, 1999, 76th Leg., R.S., ch. 414, § 1.01, 1999 Tex. Gen. Laws 2639–2736. For most purposes, the effective date of the UCC was July 1, 2001. See id. § 3.01(a), 1999 Tex. Gen. Laws at 2747. "Except as otherwise provided [in article 3 of the Act], this Act applies to a transaction or lien within its scope, even if the transaction or lien was entered into or created before this Act takes effect." Id. § 3.02(a), 1999 Tex. Gen. Laws at 2747; but see In re

Dota, 288 B.R. 448, 458 n. 21 (S.D.Tex.2003) (stating that prior version of code applied because "facts" occurred prior to effective date of new version). The UCC also provides that it "does not affect an action, case, or proceeding commenced before the effective date of this Act." Id. § 3.02(c), 1999 Tex. Gen. Laws at 2748. The floor-plan loan agreement at issue was renewed December 31, 1999. The Buyers filed the lawsuit on April 26, 2001. Both sides presume the prior law applies. Neither has raised an issue regarding

motion for summary judgment. After nonsuiting their claim for damages, the Buyers filed their own summary-judgment motion. The trial court granted it. This appeal ensued.

## II. SUMMARY–JUDGMENT ANALYSIS

### A. Summary–Judgment Standards of Review

On appeal, the standard of review for the grant of a motion for summary judgment is determined by whether the motion was brought on no-evidence or traditional grounds. TEX.R. CIV. P. 166a(i), (c); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 771 (Tex.App.-Corpus Christi 2003, no pet.) (op. on reh'g). The difference in relative burdens between the parties in the two types of summary-judgment motions is significant. *Id.* Determination of the nature of the motion for summary judgment under analysis is critical. *Id.* Here, both parties brought traditional motions for summary judgment. *See* TEX.R. CIV. P.166a(c).

The function of summary judgment is to eliminate patently unmeritorious claims and defenses, not to deprive litigants of the right to a jury trial. *Alaniz v. Hoyt*, 105 S.W.3d 330, 344 (Tex.App.-Corpus Christi 2003, no pet.). In both traditional and no-evidence summary-judgment motions, we review the evidence "in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences." *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex.App.-Corpus Christi 2003, no pet.). The movant bears the burden of showing both no genu-

ine issue of material fact and entitlement to judgment as a matter of law. *Hoyt*, 105 S.W.3d at 345.

■ When a summary-judgment order does not specify the grounds on which it is based, we affirm the trial court's ruling if any of the theories advanced in the motion are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). Here, however, the trial court specified its grounds:

Upon consideration of the motion, the response, the summary judgment evidence and the argument of counsel, the Court found that each Plaintiff purchased a vehicle from Greg Dota d/b/a Greg's Auto Sales ("Dota"), and that each Plaintiff was a buyer in [the] ordinary course of business in connection with his/her/its purchase of such vehicle . . . .

The Court was of the opinion that Plaintiffs' purchases of vehicles from Greg Dota d/b/a Greg's Auto Sales cut off the Bank's inventory security interest in such vehicles, and was therefore of the opinion that the motion should be granted.

It is therefore ORDERED, ADJUDGED and DECREED that the Motion for Summary Judgment of Plaintiffs/Counter defendants Michael W. Buss, Tiffany Riha, Anthony Ott and Faltisek Paving, Inc. is granted.

It is further ORDERED, ADJUDGED, and DECREED that Plaintiffs' purchases of vehicles from Greg Dota d/b/a Greg's Auto Sales cut off the Bank's inventory security interest in such vehicles, and each Plaintiff owns each such vehicle free and clear of any claim of the Bank.

the applicability of the amended version. In any event, the revisions do not involve substantive changes relevant to this litigation.

Because we prefer simplicity, we cite throughout this opinion to the amended provisions.

Accordingly, we limit our review to these grounds. *See id.; see also Pena v. State Farm Lloyds,* 980 S.W.2d 949, 953 (Tex. App.-Corpus Christi 1998, no pet.).

The non-movant has the burden to respond to a traditional summary-judgment motion if the movant conclusively: (1) establishes each element of its cause of action or defense; or (2) negates at least one element of the non-movant's cause of action or defense. *Hoyt,* 105 S.W.3d at 345. When: (1) both sides move for summary judgment; and (2) the trial court grants one motion and denies the other, we review both parties' summary-judgment evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000); *Frost Nat'l Bank v. L & F Distribs.,* 122 S.W.3d 922, 929 (Tex.App.-Corpus Christi 2003, pet. filed). Since each party is a movant, the burden is the same for both: to establish entitlement to summary judgment by conclusively proving all the elements of the cause of action or defense as a matter of law. *Buccaneer's Cove, Inc. v. Mainland Bank,* 831 S.W.2d 582, 583–84 (Tex.App.-Corpus Christi 1992, no writ). Neither may prevail because of the failure of the other to discharge its burden. *Id.* at 584. When, as here, the only issue both movants presented to the trial court was a question of law, we render the judgment the trial court should have rendered if we reverse. Tex.R.App. P. 43.2(c); *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). Our review is de novo. *Ortega,* 97 S.W.3d at 771. We turn to a discussion of the statutory schemes at issue.

### B. Discussion

#### 1. The Statutory Schemes

##### a. The Texas Certificate of Title Act

The Texas Legislature originally passed the Act in 1939. Its legislative history reflects that its purpose was to replace the transfer of vehicles by bill of sale with transfer by certificate of title, to be administered by a central state-wide agency. *Drake Ins. Co. v. King,* 606 S.W.2d 812, 815 (Tex.1980); *see generally* Tex. Transp. Code Ann. § 501.001— § 501.138 (Vernon 1999 & Supp.2004). The Act specifically provides that it shall be construed to lessen and prevent: (1) the theft of motor vehicles; (2) the importation into this State of and traffic in stolen vehicles; and (3) the sale of an encumbered vehicle without disclosure to the purchaser of a lien secured by the vehicle. Tex. Transp. Code Ann. § 501.003 (Vernon 1999). The legislative intent of the Act was not to prevent sales and transfers of interest in motor vehicles. *See Gramercy Ins. Co. v. Arcadia Fin., Ltd.,* 32 S.W.3d 402, 408 (Tex. App.-Houston [14th Dist.] 2000, no pet.); *Cash v. Lebowitz,* 734 S.W.2d 396, 398 (Tex.App.-Dallas 1987, writ ref'd n.r.e.).

A sale in violation of the Act is void. *See* Tex. Transp. Code Ann. § 501.073 (Vernon 1999). Title does not pass until the requirements of the Act are satisfied. *See id.* However, non-compliance with the Act does not override a clear showing of valid and complete transfer of ownership. *Gramercy Ins. Co.,* 32 S.W.3d at 408; *Najarian v. David Taylor Cadillac,* 705 S.W.2d 809, 812 (Tex.App.-Houston [1st Dist.] 1986, no writ). Despite the express language of section 501.073, the sale of a vehicle without the transfer of a title certificate is valid "as between the parties, when the purposes of the Certificate of Title Act are not defeated, although the Act declares that the non-transfer of such certificates renders the sale void." *Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co.,* 465 S.W.2d 933, 937 (Tex. 1971); *see Gramercy Ins. Co.,* 32 S.W.3d at 408; *see also Perry v. Breland,* 16 S.W.3d

182, 187 (Tex.App.-Eastland 2000, pet. denied).

Of specific relevance to the dispute in this case, the Act provides that a motor vehicle may not be the subject of a subsequent sale unless, at the time of sale, the owner designated in the certificate of title transfers it. TEX. TRANSP. CODE ANN. § 501.071 (Vernon 1999). However, a separate section of the Act expressly provides that the Code preempts the Act: chapters one through nine of the business and commerce code control over any conflicting provision of the Act. See TEX. TRANSP. CODE ANN. § 501.005 (Vernon 1999). We turn to a discussion of the Code.

### b. The Texas Business and Commerce Code

■ The Code contains the Texas version of the Uniform Commercial Code. Under the Code, "goods" are defined as "all things ... which are movable at the time of identification to the contract for sale...." TEX. BUS. & COM.CODE ANN. § 2.105(a) (Vernon 1994). Motor vehicles are included in this broad definition. See Hudson Buick, Pontiac, GMC Truck Co. v. Gooch, 7 S.W.3d 191, 197 (Tex.App.-Tyler 1999, pet. denied) (citing Assocs. Disc. Corp. v. Rattan Chevrolet, Inc., 462 S.W.2d 546, 549 (Tex.1970)). The Code provides, unless otherwise explicitly agreed, that title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods. TEX. BUS. & COM. CODE ANN. § 2.401(b) (Vernon 1994). Title passes despite any reservation of a security interest. Id. Moreover, title passes even though a document of title is to be delivered at a different time or place. Id.

Under the Code, a "buyer in ordinary course of business" is a person, who in good faith and without knowledge that the sale violates the rights of another person in the goods, buys in the ordinary course of business from a person in the business of selling goods of that kind. See TEX. BUS. & COM.CODE ANN. § 1.201(9) (Vernon Supp. 2004). The Code protects a "buyer in ordinary course of business" even though a security interest is perfected. TEX. BUS. & COM.CODE § 9.320(a) (Vernon 2002). Its protections extend even to a "buyer in ordinary course of business" who knows of the existence of a lien. Id.

### 2. Application of the Statutory Schemes to the Parties' Dispute

■ FNB contends that the Buyers did not comply with the requirements of the Act when they did not obtain certificates of title contemporaneously with their purchases of the vehicles. See TEX. TRANSP. CODE ANN. § 501.071 (Vernon 1999). As a consequence, FNB argues, the sales to the Buyers were void. See TEX. TRANSP. CODE ANN. § 501.073 (Vernon 1999). Therefore, FNB continues, the Buyers were not buyers in the ordinary course of business, and the Buyers' purchases did not extinguish its lien. Similarly, the Buyers also focus on the relationship between the Act and the Code, not on Dota's status as owner or dealer. We limit our analysis accordingly.[3]

---

**3.** Section 501.071 of the Act provides that a motor vehicle may not be the subject of a subsequent sale unless the "owner" transfers the certificate of title at the time of sale. TEX. TRANSP. CODE ANN. § 501.071 (Vernon 1999). Under the Act, an "owner" is defined as "a person, other than a manufacturer, importer, distributor, or dealer, claiming title to or having a right to operate under a lien a motor vehicle that has been subject to a first sale." TEX. TRANSP. CODE ANN. § 502.002(16) (Vernon Supp.2004). The parties do not dispute that Dota was a "dealer," that is, "a person who purchases motor vehicles for sale at retail." TEX. TRANSP. CODE ANN. § 501.002(2) (Vernon Supp.2004).

The Buyers argue that the Code controls any conflict between the Act and the Code with regard to the transfer of title and the effect on FNB's security interest.

### a. Conflicting Statutory Provisions

The legislative history of the Act details the legislative mandate that the Code preempts over the Act in the event of a conflict between the two statutory schemes:

> [T]he Texas legislature has decided which statutory scheme applies in the event there is a conflict between the Code and the Act. Section 501.005 of the Act states: 'Chapters 1–9, Business and Commerce Code, control over a conflicting provision of this chapter.' TEX. TRANSP. CODE ANN. § 501.005 (Vernon 1999). The legislative history behind the passage of this provision of the Act is instructive. In April of 1971, the supreme court issued the opinion of *Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co.*, 465 S.W.2d 933 (Tex. 1971). In that opinion, the court had held the Act's provisions requiring transfer of the certificate of title at the time of sale were not superseded by section 2.41 of the Code. *Phil Phillips Ford*, 465 S.W.2d at 938. At that time, the Act did not provide that the Code controlled in the event of a conflict. Thereafter, in May of 1971, the legislature amended the Act to include [the predecessor to section 501.005] which stated that the Code controlled if there was a conflict with the Act. This amendment of the Act overruled the *Phil Phillips Ford* opinion and established that section 2.401(b) of the Code controls over the Act's provision that purports to void the sale of an automobile absent the transfer of the certificate of title. *See In re Bailey Pontiac, Inc.*, 139 B.R. 629, 633 n. 3 (N.D.Tex.1992).

*Hudson Buick*, 7 S.W.3d at 198 (footnotes omitted). In 1971, the Legislature also repealed former section 45 of the Act, which had provided that "[e]xposure for sale of any motor vehicle by the owner thereof with the knowledge or consent of any mortgagee shall not affect the rights of any mortgagee as against all third parties." *Nelms v. Gulf Coast State Bank*, 516 S.W.2d 421, 423 (Tex.App.-Houston [1st Dist.] 1974), *aff'd*, 525 S.W.2d 866 (Tex.1975). In the emergency clause of the 1971 amendment to the Act, the Legislature declared that the 1971 amendments were necessary "to remove doubt and . . . to make consistent the provisions and terminology of the Certificate of Title Act with the Texas Uniform Commercial Code." *See* Act of April 29, 1971, 62nd Leg., R.S., ch. 123, § 8, 1971 Tex. Gen. Laws 895, 896. This legislative history clearly evinces the Legislature's determination to resolve conflicts between the Act and the Code in favor of the Code.

### b. Avoiding the Preemptive Effect of the Code by Avoiding the Conflict

FNB attempts to avoid the consequences of the preemptive provision of the Act by arguing there is no conflict between

---

In a federal case originating in bankruptcy court involving Dota, FNB, a purchaser of one of Dota's vehicles, and the same floor-plan financing agreement at issue here, the United States District Court for the Houston Division of the Southern District of Texas held that Dota was not an owner under the Act. *See In re Dota*, 288 B.R. 448, 458 (S.D.Tex.2003). Therefore, section 501.071 of the Act did not apply. *See id.* In *Dota*, as in this litigation, FNB argued that its lien was superior to the rights of an individual who purchased a vehicle from Dota. *See id.* The federal district court reversed the bankruptcy court and held that the purchaser of the vehicle was a buyer in the ordinary course of business who took the vehicle free of the security interest held by FNB. *See id.* at 464.

the two statutes. Under FNB's analysis, the sales to the Buyers were not completed in accordance with the Act and were therefore void. In other words, FNB contends we should look first to the Act to determine the effect of the transactions at issue. Since the transactions were "void" under the Act, FNB asserts, the provisions of the Code simply do not come into play.

FNB's position finds support in opinions of the Dallas Court of Appeals, which has repeatedly held that the Act controls transactions involving the sale of motor vehicles without a proper transfer of the certificate of title. *See, e.g., Gallas v. Car Biz, Inc.,* 914 S.W.2d 592, 594–95 (Tex. App.-Dallas 1995, writ denied); *Pfluger v. Colquitt,* 620 S.W.2d 739 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.); *Morey v. Page,* 802 S.W.2d 779, 783–84 (Tex.App.-Dallas 1990, no writ); *Ballard v. Assocs. Invest. Co.,* 368 S.W.2d 232, 234 (Tex.Civ. App.-Dallas 1963, writ ref'd n.r.e.). According to these cases, "[t]his interpretation gives meaning to both statutes and obviates any necessity to resort to [the preemption provision of the act] to resolve any apparent conflict." *See Gallas,* 914 S.W.2d at 595.

Other cases also find no conflict between the Act and the Code with regard to third-party rights so as to trigger the preemption provision in the Act. That line of authority holds that a purported transfer of an automobile that does not comply with the Act does not affect a third party's rights. *See Bank One Texas, N.A. v. Arcadia Financial Ltd.,* 219 F.3d 494, 498 (5th Cir.2000); *see also United States v. 1977 Porsche Carrera,* 946 F.2d 30, 34 (5th Cir.1991). Under this analysis, a third party's perfected security interest is not interrupted when a purported buyer attempts to purchase an automobile without receiving title as required to complete a sale under the Act. *See Bank One Texas,*

*N.A.,* 219 F.3d at 498. The sale may be valid as between the buying and selling parties, but the purchaser only takes an equitable possessory interest and a right to acquire such right, title, and interest as the seller possesses. *See 1977 Porsche Carrera,* 946 F.2d at 34.

Despite broad language regarding the rights of "third parties," these cases do not address the situation presented by a priority dispute between a floor-plan financier and individuals claiming to be buyers in the ordinary course of business. *See Bank One Texas, N.A.,* 219 F.3d at 498 (priority dispute between floor-plan financier and purchase-money lender); *see also 1977 Porsche Carrera,* 946 F.2d at 34 (dispute between state and attorney in forfeiture action where alleged drug dealer had "sold" vehicle used to distribute contraband to attorney in partial satisfaction of fees).

We conclude that neither FNB's argument nor the approaches taken by the Dallas court and the Fifth Circuit account for the obvious disparity between the Act and the Code with regard to when title passes. The Legislature's mandate, in the event of conflict, is that the provisions of the Code control. *See Gallas,* 914 S.W.2d at 595–601 (Wright, J., dissenting); *Pfluger,* 620 S.W.2d at 744–48 (Stephens, J., concurring).

We do not distinguish between the protection the law affords innocent purchasers of used vehicles from the protections afforded innocent purchasers of new vehicles. *See Tyler Car & Truck Ctr. v. Empire Fire & Marine Ins. Co.,* 2 S.W.3d 482, 485–86 (Tex.App.-Tyler 1999, pet. denied) (discussing *State v. Southwind Auto Sales,* 951 S.W.2d 849, 852 (Tex.App.-San Antonio 1997, no writ)). *Tyler Car* explained that some of the obvious contradictions in this area of the law result from strict application of the Act in cases involving crime,

fraud, or the rights of third parties where strict application of the Act "yielded the only equitable result." *Tyler Car*, 2 S.W.3d at 485; *see Gallas*, 914 S.W.2d at 593; *see also Allstate Ins. Co. v. Dykes*, 461 S.W.2d 519, 522 (Tex.Civ.App.-Tyler 1970, writ ref'd n.r.e.)).

### c. The Context of the Legislative Scheme

Application of the Code in the event of conflict with the Act is supported by analysis of the context of the two statutory schemes. There have been repeated nation-wide difficulties in reconciling certificate-of-title statutes and the Uniform Commercial Code. *See generally* Steven N. Leitess, *Modernizing Certificate of Title Laws: Is it Time for a Uniform Certificate of Title Law*, 2002 ABI JNL. LEXIS 192 (Am.Bankr.Inst. Dec. 2002); Larry T. Bates, *Certificates of Title Under Revised Article Nine*, 53 BAYLOR L.REV. 735 (2001). One of the declared purposes of the Code is to simplify, clarify, and modernize the law governing commercial transactions. TEX. BUS. & COM.CODE ANN. § 1.103(a)(1) (Vernon Supp.2004). It also is to be construed and applied to make uniform the law among the various jurisdictions. *See* TEX. BUS. & COM.CODE ANN. § 1.103(a)(3) (Vernon Supp.2004).

### d. Consistency

Last but not least, application of the Code to protect a buyer in the ordinary course of business comports with the general approach taken in earlier cases issued by this Court. *See, e.g., Bures v. First Nat'l Bank*, 806 S.W.2d 935, 939–40 (Tex. App.-Corpus Christi 1991, no writ) (floor-plan financier's security interest in trailer cut off by buyer in ordinary course of business); *Apeco Corp. v. Bishop Mobile Homes, Inc.*, 506 S.W.2d 711, 716 (Tex. App.-Corpus Christi 1974, writ ref'd n.r.e.) (manufacturer's security interest in mobile home cut off by buyer in ordinary course of business). Although *Apeco* referenced the doctrine that a subsequent sale is void unless the Act is complied with, this Court in that case found no conflict between the Act and the Code given that the case involved a first, and not subsequent, sale. *See id.* Thus, *Apeco* held that the Act was inapplicable. *Id.*

### III. CONCLUSION

■ We conclude that application of the Code in the circumstances of this case facilitates the creation of a uniform system of laws that will meet the reasonable expectations of those who engage in commercial transactions, not just in Texas, but across the country. Uniform laws benefit lenders and borrowers alike. Accordingly, we find the Act and the Code in conflict with regard to when legal title passes under the circumstances presented by this case.[4] We hold that the provisions of the

4. In addition to the authorities discussed in this opinion, we acknowledge a wealth of conflicting and often contradictory case law on the relationship between the Act and the Code. *See, e.g., Assocs. Disc. Corp. v. Rattan Chevrolet, Inc.*, 462 S.W.2d 546, 549 (Tex. 1970); *Park Cities Ltd. P'ship v. Transpo Funding Corp.*, 131 S.W.3d 654, 659–60 (Tex. App.-Dallas 2004, pet. filed); *Arcadia Fin., Ltd., v. Southwest-Tex Leasing Co., Inc.*, 78 S.W.3d 619, 623 (Tex.App.-Austin 2002, pet. denied); *Hudson Buick, Pontiac, GMC Truck Co. v. Gooch*, 7 S.W.3d 191, 197 (Tex.App.- Tyler 1999, pet. denied); *Tyler Car & Truck Ctr. v. Empire Fire & Marine Ins. Co.*, 2 S.W.3d 482, 485–86 (Tex.App.-Tyler 1999, pet. denied); *State v. Southwind Auto Sales*, 951 S.W.2d 849, 852 (Tex.App.-San Antonio 1997, no writ); *Bruckner Truck Sales v. Farm Credit Leasing Servs. Corp.*, 909 S.W.2d 75, 80–81 (Tex.App.-Amarillo 1995, no writ); *Pierce v. First Nat'l Bank*, 899 S.W.2d 365, 369–70 (Tex.App.-Houston [14th Dist.]1995, no writ); *Morey v. Page*, 802 S.W.2d 779, 783–84 (Tex.App.-Dallas 1990, no writ); *Nelms v. Gulf Coast State Bank*, 516 S.W.2d

Code control to establish the relative rights of a floor-plan financier and a purchaser of a used vehicle from a dealer. *See* TEX. TRANSP. CODE ANN. § 501.005 (Vernon 1999); *cf. Hudson Buick,* 7 S.W.3d at 198 (detailing legislative history behind conflicting provisions in determining that Code and not Act controlled ownership of vehicle in personal-injury liability action); *Tyler Car,* 2 S.W.3d at 485–86 (refusing to apply Act to invalidate sale in insurance coverage dispute); *Bailey Pontiac,* 139 B.R. at 633 n. 3 (rejecting argument that Act controlled passage of title).

We conclude that the Texas Business and Commerce Code, not the Texas Certificate of Title Act, determines the legal effect of the transactions at issue. We hold that the Buyers were buyers in the ordinary course of business. Their purchases cut off FNB's security interest in the vehicles.

Accordingly, we overrule FNB's sole issue. We affirm the trial court's judgment in favor of the Buyers.

CHAVEZ, J., not participating.