**In re Gregory P. DOTA d/b/a Greg's Auto Sales and Carmen Dota, Debtors.**

**Peyton Lundy, Appellant,**

v.

**First National Bank of El Campo and Joseph Hill, Trustee, Appellees.**

**No. CIV.A.H–02–3421.**

United States District Court, S.D. Texas, Houston Division.

Jan. 27, 2003.

---

Gregory P. Dota, El Campo, TX, Pro se.

William Gibbs Harris, Attorney at Law, Sugar Land, TX, for Gregory P. Dota dba Greg's Auto Sales.

Barnet B. Skelton, Jr., Attorney at Law, Houston, TX, for Peyton Lundy.

Donald Joseph Knabeschuh, Parker & Knabeschuh, Houston, TX, for First National Bank of El Campo.

### OPINION AND ORDER

LAKE, District Judge.

Appellant, Peyton Lundy, appeals the Judgment denying his claims for declaratory judgment, turnover, and conversion entered by the United States Bankruptcy Court for the Southern District of Texas, Houston Division, on July 30, 2002. For the reasons set forth below, the Judgment of the bankruptcy court will be reversed, and this action will be remanded to the bankruptcy court for entry of judgment in Lundy's favor on his claims for declaratory judgment and turnover and for consideration of his claim for conversion.

### I. Background

The Judgment appealed in this case was entered by the United States Bankruptcy Court for the Southern District of Texas on July 30, 2002, in an adversary proceeding styled *Peyton Lundy v. First National Bank of El Campo and Joseph Hill, Trustee,* Adversary No. 01–3515. This adversary proceeding is ancillary to the Chapter 7 bankruptcy case of Gregory P. Dota (Dota) d/b/a Greg's Auto Sales and Carmen Dota administered by the bankruptcy court under Case No. 01–34223–H3–7. Joseph Hill is the Chapter 7 Trustee (Trustee).

### A. Factual Background

Dota was a licensed motor vehicle dealer who sold used cars to the public. On December 31, 1999, Dota executed a Commercial Security Agreement with appellee, First National Bank of El Campo (Bank), for floor plan financing of his inventory. The loan agreement provided for the Bank to retain possession of the original certificates of title to Dota's inventory of used vehicles. The loan agreement required Dota to arrange for the release of the original title from the Bank for each vehicle sold and to apply the sales proceeds to the loan. The Bank perfected its security interest in Dota's vehicles by filing a financing statement at the Texas Secretary of State's office.[1]

---

**1.** Joint Stipulation, Item 5 in Record on Appeal (ROA), ¶ 11. The Joint Stipulation was instrument no. 14 filed in Adversary Proceeding 01–3515. Although the Joint Stipulation references a number of exhibits, the exhibits were not attached to the copy included in the ROA.

On November 13, 2000, Lundy executed two separate contracts, titled "Motor Vehicle Purchase Order," for the purchase of two vehicles from Dota, and simultaneously executed an "Application for Texas Certificate of Title" as to each vehicle. Lundy left the executed applications with Dota, who was to complete the process required for issuance of new certificates of title to Lundy for the vehicles. Lundy delivered a check for $40,786.64 to Dota as full payment for both vehicles, and took possession of bota vehicles: a 1999 Chevrolet Silverado Pickup Truck, and a 1998 Chevrolet Tahoe. Lundy's check was credited to Dota's account at the Bank on the same date.[2] Lundy subsequently obtained the certificate of title for the Tahoe, but did not obtain the certificate of title for the Silverado.

Dota failed to notify the Bank of the Silverado's sale to Lundy, failed to apply the proceeds from the sale to his loan from the Bank, and failed to request or arrange for the Bank to release the title to the vehicle. On April 16, 2001, Dota and his wife, Carmen Dota, filed a chapter 7 petition in bankruptcy. The Bank demanded that Lundy return the Silverado.

## B. Procedural Background

Lundy filed an adversary proceeding against the Bank and the Trustee seeking declaratory judgment for title to the Silverado, turnover of the certificate of title, and damages for conversion.[3] On July 23, 2002, the bankruptcy court conducted a bench trial at which the parties submitted the following Joint Stipulation:

1. On November 13, 2000, Plaintiff purchased from Debtor, Gregory P. Dota, d/b/a Greg's Auto Sales, a used 1999 Chevrolet Silverado Pickup Truck, for which he paid the cash sum of $22,003.48. On the same day, Plaintiff purchased a used 1998 Chevrolet Tahoe for which he paid the cash sum of $18,782.16. The vehicles were purchased for the personal use of Plaintiff and his family.

2. Payment for the two vehicles was effected pursuant to a check drawn on Plaintiff's personal bank account ... The check was deposited by Debtor in Debtor's operating account at First National Bank of El Campo on November 13, 2000.

3. ... Contemporaneous with the execution of each Motor Vehicle Purchase Order, Plaintiff executed an Application for Texas Certificate of Title which was retained by Debtor for the purpose of processing issuance of a new Certificate of Title. Although Plaintiff subsequently received a Certificate of Title for the 1998 Chevrolet Tahoe, he did not receive a Certificate of Title for the 1999 Chevrolet Silverado Pickup Truck. Plaintiff took possession of the vehicles on November 13, 2000, and continues to have possession of the vehicles.

4. Debtor, at all times relevant to this proceeding, was a licensed motor vehicle dealer, holding general distinguishing number P37906, issued under Chapter 503 of the Texas Motor Vehicle Commission Code. Debtor was in the business of selling used cars to the public.

5. Plaintiff purchased the vehicles in good faith and without knowledge that the sale to him was in violation of the ownership rights or security interests of First National Bank of El Campo, or any other third party, in the vehicles.

---

2. The parties do not explain why the Bank did not attach the proceeds from Dota's sale of the Silverado when they were deposited in his account.

3. Plaintiff's Complaint, Item 1 in ROA, at pp. 4–5.

Debtor was a person in the business of selling vehicles of the kind purchased by Plaintiff and Plaintiff performed all actions required by law of purchasers of vehicles from dealers to obtain the Certificate of Title for the 1999 Chevrolet pickup truck.

6. Subsequent to the purchase, Defendant, First National Bank of El Campo, notified Plaintiff that it asserted a security interest in the inventory of the Debtor and had possession of the Certificate of Title to the 1999 Chevrolet Silverado pickup truck. First National Bank of El Campo has refused to release the Certificate of Title so as to allow Plaintiff to obtain the new Certificate of Title.

7. The vehicle in question was a used vehicle, for which a Certificate of Title had already been issued.

8. The Certificate of Title was endorsed to Debtor on the reverse side thereof. The First National Bank of El Campo is not shown as a lienholder on the Certificate of Title.

9. The 1999 Chevrolet Silverado Pickup Truck, which is the subject of Plaintiff's Complaint, was not scheduled by Debtor and was not administered by Defendant Joseph M. Hill, Trustee, as property of Debtor's estate.

10. First National Bank of El Campo held a security interest in any and all inventory of Dota to secure a line of credit for "floor plan" financing.

11. First National Bank of El Campo perfected its security interest in the vehicle inventory of Dota by filing a UCC–1 with the Texas Secretary of State office.

12. First National Bank of El Campo has possession of the original certificate of title to the 1999 Chevrolet Silverado Pickup Truck, which is the subject of this proceeding.[4]

On July 30, 2002, the bankruptcy court entered a Memorandum Opinion. The bankruptcy court held that the sale of the Silverado from Dota to Lundy was not valid because Lundy did not receive a certificate of title at the time of the sale and, therefore, that Lundy could not have been a "buyer in the ordinary course of business" who took the Silverado free of the Bank's security interest.[5] The bankruptcy court based its conclusion on the Fifth Circuit's opinion in *Bank One Texas, N.A. v. Arcadia Financial, Ltd.,* 219 F.3d 494 (5th Cir.2000):

> The *Bank One* case is directly applicable to the instant adversary proceeding. Under section 501.071(a) of the Texas Transportation Code, the sale from Dota to ... [Lundy] was not valid unless accompanied by a certificate of title. Thus, the court concludes, following *Bank One,* that ... [Lundy] could not have been a buyer in the ordinary course of business with respect to the purported sale of the Silverado.[6]

The same day the bankruptcy court entered a Judgment denying Lundy's claims for declaratory judgment, turnover, and damages.

## II. *Standard of Review*

■ The court reviews findings of fact by the bankruptcy court under the clearly erroneous standard and reviews issues of law and mixed questions of fact and law *de novo.* Fed. Bank. R. Proc. 8013. *In re Universal Seismic Associates, Inc.,* 288

---

4. Joint Stipulation, Item 5 in ROA.

5. Memorandum Opinion of July 30, 2002, Item 6 in ROA.

6. *Id.* at p. 4.

F.3d 205, 207 (5th Cir.2002). Because this appeal is based on the bankruptcy court's application of law to undisputed facts, the *de novo* standard of review applies. *Id.*

## III. *Issues on Appeal*

Lundy raises the following issues on appeal:

2. The Bankruptcy Court erred in finding that under Tex. Trans. Code § 501.071(a) the sale of the 1999 Chevrolet Silverado Pickup Truck which is the subject of this suit was not valid unless accompanied by transfer of the Certificate of Title.

3. The Bankruptcy Court erred in finding that Tex. Trans. Code § 501.071(a) applied to the sale of the 1999 Chevrolet Silverado Pickup Truck which is the subject of this suit since Debtor was not an "owner." A "dealer" is excluded from the definition of "owner" in Tex. Trans. Code § 501.002(6).

4. The Bankruptcy Court erred in holding that Plaintiff/Appellant could not have been a buyer in the ordinary course of business with respect to the sale of the 1999 Silverado Pickup Truck.

5. The Bankruptcy Court erred in finding that Plaintiff/Appellant was not a buyer in the ordinary course of business who took free of any alleged lien or security interest of First National Bank of El Campo.

6. The Bankruptcy Court erred in failing to grant the relief requested in Plaintiff's Complaint.[7]

### A. Summary of Arguments

Lundy argues that the bankruptcy court erroneously based its decision on the Fifth Circuit's opinion in *Bank One*, 219 F.3d at 494, despite the existence of legal and factual distinctions between the two cases.[8] Lundy argues that because he paid the purchase price for the Silverado pursuant to a written contract, took physical possession of the vehicle, and did everything that the Texas Certificate of Title Act (COTA) required him to do to obtain a new certificate of title to the vehicle, he is entitled to declaratory judgment for title because he is a buyer in the ordinary course of business who took the Silverado free of the Bank's security interest.[9]

The Bank argues that Lundy is not a buyer in the ordinary course of business because he did not receive a certificate of title at the time of sale as required by § 501.071 of the COTA, and that because Lundy is not a buyer in the ordinary course of business, his purchase of the Silverado failed to extinguish the Bank's security interest.[10]

Lundy argues that if the Bank's interpretation of the COTA is valid, the requirements of the COTA conflict with those of the Texas Business & Commerce Code (Code), and that pursuant to § 501.005 of the COTA, the Code should prevail.[11] *See* Tex. Trans. Code

7. Statement of Issues on Appeal, Paragraph II in Designation of Items to be Included in Record on Appeal and Statement of Issues. (There is no Issue No. 1.)

8. Brief of Appellant, Docket Entry No. 5, at pp. 12–14.

9. *Id.* at pp. 8–11. In the 1995 legislative session the COTA, formerly cited as Tex.Rev. Civ. Stat. Ann. art. 6687–1 (Vernon Supp. 1995), became part of the Texas Transporta-

tion Code and is now properly cited as Tex. Transp. Code Ann. §§ 501.001 *et seq.* (Vernon 1999).

10. Brief of Appellee, Docket Entry No. 6, at pp. 4–7.

11. Brief of Appellant, Docket Entry No. 5, at p. 11.

§ 501.005 ("Chapters 1–9, Business & Commerce Code, control over a conflicting provision of this chapter."). The Bank argues that the two statutes are not in conflict.[12]

## B. Application of Texas Law

■■■■ All of the issues in this appeal are governed by Texas law. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). In making an *Erie* determination, the court is "emphatically not permitted to do merely what [it] thinks best; [it] must do that which [it] think[s] the [Texas] Supreme Court would deem best." *Jackson v. Johns–Manville Sales Corp.,* 781 F.2d 394, 397 (5th Cir.) (*en banc* ), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). The Texas Supreme Court has not yet resolved a priority dispute between a used car dealer's floor plan financier and an individual claiming to be a buyer in the ordinary course of business. Accordingly, in deciding this case the court is required to make an *Erie* guess as to what the Texas Supreme Court would most likely decide under the facts of this case. *See Herrmann Holdings Ltd. v. Lucent Technologies Inc.,* 302 F.3d 552, 558 (5th Cir. 2002) ("[I]n deciding this case, we are required to make an *Erie* guess as to what the Texas Supreme Court would most likely decide."). The court's task is to "attempt to predict state law, not to create or modify it." *Id., quoting United Parcel Service, Inc. v. Weben Indus., Inc.,* 794 F.2d 1005, 1008 (5th Cir.1986). In making an *Erie* guess, the court defers to intermediate state appellate court decisions "unless convinced by other persuasive data that the highest court of the state would

decide otherwise." *Id., quoting First National Bank of Durant v. Trans Terra Corp.,* 142 F.3d 802, 809 (5th Cir.1998).

## IV. *Analysis*

The parties invoke both the COTA and the Code in support of their arguments. The bankruptcy court held that the Fifth Circuit's analysis of the interaction between these two statutory schemes in its *Bank One* opinion controls the outcome of this action.

In *Bank One* the floor plan financier of a used car dealership (Bank One) sought declaratory judgment that the security interest it held in the dealership's inventory had priority over the security interest claimed by a purchase money lender (Arcadia) in nine automobiles sold by the dealership to buyers—alleged to have been buyers in the ordinary course of business—pursuant to installment contracts held by Arcadia. *See Bank One,* 219 F.3d at 497. Unlike this case, which requires the court to resolve a priority dispute between a floor plan financier and an individual claiming to be a buyer in the ordinary course of business, *Bank One* required the court to resolve a priority dispute between a floor plan financier and a purchase money lender. Unlike this case, which was initiated by an individual buyer, the individual buyers of the nine automobiles at issue in *Bank One* were not parties to the *Bank One* action. Moreover, one of the Fifth Circuit's express holdings in *Bank One* was that "the buyers of the [nine] automobiles [at issue] were not indispensable parties." *Id.* Because the individual buyers were not parties to the *Bank One* action, and because their interests in the nine automobiles at issue were neither at stake nor before the *Bank One* court, the court concludes that this case is both factu-

---

**12.** Brief of Appellee, Docket Entry No. 6, at pp. 4–5.

ally and legally distinguishable from the Fifth Circuit's decision in *Bank One*. The court must therefore analyze the interaction of the COTA and the Code in light of the arguments asserted by the parties and the undisputed facts.[13]

## A. Texas Certificate of Title Act (COTA)

Citing Texas Transportation Code § 501.002(20), § 501.071, and § 501.073, the Bank argues that Lundy's ownership interest in the Silverado is subordinate to its security interest because Lundy purchased the Silverado at a "subsequent sale" without receiving a certificate of title at the time of purchase. Lundy argues that § 501.071 and § 501.073 do not apply because Dota was a licensed Texas dealer and not an owner.[14]

### 1. § 501.002(2): Subsequent Sale

Section 501.002(20) defines "subsequent sale" to mean:

(a) the bargain, sale, transfer or delivery of a motor vehicle that has been previously registered or licensed in this state or elsewhere, with intent to pass interest in the vehicle other than a lien, regardless of where the bargain, sale, transfer, or delivery occurs; and

(b) the registration of the vehicle if registration is required under the laws of this state.

Tex. Trans. Code § 501.002(20). The parties do not dispute that the Dota's sale of the Silverado to Lundy was a "subsequent sale" as defined by § 501.002(20) of the COTA.[15]

### 2. Compliance with § 501.071

■ The Bank argues that Dota's sale of the Silverado to Lundy was void because it "involved a subsequent sale without the transfer of a certificate of title" as required by § 501.071.[16] That statute states:

(a) A motor vehicle may not be the subject of a subsequent sale unless the owner designated in the certificate of title transfers the certificate of title at the time of sale.

(b) The transfer of the certificate of title must be on a form prescribed by the department that includes a statement that:

(1) the signer is the owner of the vehicle; and

(2) there are no liens on the vehicle except as shown on the certificate of title or as fully described in the statement.

Tex. Trans. Code § 501.071.

Lundy argues that because Dota was a "dealer" and not an "owner" as those terms are defined by § 501.002(2) and (16) of the COTA, Lundy's purchase of the Silverado from Dota is not void for failure

---

**13.** See Joint Stipulation, Item 5 in ROA.

**14.** Brief of Appellant, Docket Entry No. 5, at p. 10.

**15.** The parties stipulated that the Silverado "was a used vehicle, for which a Certificate of Title had already been issued." Joint Stipulation, Item 5 in ROA, ¶ 7. The COTA defines "used motor vehicle" to mean "a motor vehicle that has been the subject of a first sale." Tex. Trans. Code § 501.002(23). Sale of a motor vehicle in Texas is either a first sale or

a subsequent sale. *Radcliff Finance Corp. v. City Motor Sales, Inc.*, 159 Tex. 493, 323 S.W.2d 591, 594 (1959)("[T]he Legislature intended for these two terms when taken together to embrace every Texas transfer of any kind of motor vehicle that is required by the laws of this State in effect at the time of the sale to be registered by an ordinary owner for use on the highway.").

**16.** Brief of Appellee, Docket Entry No. 6, at p. 7.

to comply with § 501.071(a) because that statute only requires an "owner designated in the certificate of title" to transfer the certificate of title at the time of sale, but does not require a dealer to transfer the certificate of title at the time of sale. In support of his argument, Lundy cites the Texas Supreme Court's opinion in *Motor Investment Co. v. Knox City*, 141 Tex. 530, 174 S.W.2d 482, 485 (1943), for its holding that dealers who use their automobiles only for the purposes permitted under the statute need not secure a certificate of title as a condition precedent to the right to transfer them. Responding that the definition of "owner" set forth in "[§ ] 501.002(16) is not an all inclusive definition," the Bank argues that definition "is intended only to clarify that, with respect to a new, unregistered vehicle, 'there may be repeated transfers of the vehicle, such as from the manufacturer to dealer, from dealer to dealer, and from dealer to owner without the need to register the vehicle or apply for a certificate of title ... [because a]ll such sales are "first sales." ' " [17] The court is not persuaded by the Bank's argument.

The Texas Legislature defined a "dealer" in the COTA as: "a person who purchases motor vehicles for sale at retail." Tex. Trans.Code § 501.002(2). The Legislature defined an "owner" in the COTA as: "a person other than a manufacturer, importer, distributor, or dealer, claiming title to or having a right to operate under a lien a motor vehicle that has been subject to a first sale." Tex. Trans. Code § 501.002(16). Based on the unambiguous definitions of the terms "dealer" and "owner" chosen by the Texas Legislature in § 501.002(2) and (16), the court concludes that the term "owner" as used in Chapter 501 of the COTA expressly excludes dealers. *See* Tex. Trans. Code § 501.002(16)

(" 'Owner' includes a person, other than a ... dealer.").

The Texas Legislature's exclusion of "dealers" from the COTA's definition of "owner" is also reflected in the *Motor Vehicle Title Manual* prepared by the Texas Department of Transportation's Vehicle Titles and Registration Division. The explanatory text following § 501.002(16) states: "A 'dealer' is not an owner as defined in this Act." *Motor Vehicle Title Manual*, p. 20 (ed.1999). Moreover, the Texas Supreme Court has recognized the exclusion of "dealer" from the definition of "owner" for purposes of § 501.071 on at least three different occasions when it construed § 501.071's immediate predecessors: *Knox City*, 174 S.W.2d at 485; *Texas Automotive Dealers Association v. Harris County Tax Assessor–Collector*, 149 Tex. 122, 229 S.W.2d 787, 788 (1950); and *Radcliff Finance*, 323 S.W.2d at 594.

In the 1943 *Knox City* case cited by Lundy the Texas Supreme Court held that dealers who use their new automobiles only for the purposes permitted to dealers under the statute need not secure a certificate of title as a condition precedent to the right to transfer them. *Knox City*, 174 S.W.2d at 485. Seven years later in *Automotive Dealers* the Texas Supreme Court expressly stated that "Sec. 33, which covers a subsequent sale of a motor vehicle, applies only to 'owners', thus excluding its application to dealers." *Automotive Dealers*, 229 S.W.2d at 788. The court reiterated this determination later in the same opinion stating: "Since Sec. 33 requir[es] only 'owners' to make a transfer before a notary public in order to consummate a subsequent sale, a dealer is exempt by virtue of his dealer's license from complying." *Id.* at 790.

The § 33 referenced by the *Automotive Dealers* court was the then-current prede-

---

17. *Id.*, pp. 6–7, *quoting Apeco Corporation v. Bishop Mobile Homes, Inc.*, 506 S.W.2d 711, 716 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.).

cessor of § 501.071, Vernon's Ann. P.C. art. 1436–1, § 33.[18] Like § 501.071, § 33 provided that a subsequent sale would not be effective "unless the owner designated in the certificate of title" transferred the certificate of title together with a statement that the vehicle was not subject to any lien other than those noted on the certificate of title:

> No motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the Department before a Notary Public, which form shall include, among such other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title and no title to any motor vehicle shall pass or vest until such transfer be so executed.

Vernon's Annotated Penal Code article 1436–1, § 33 (1939).

Nine years later in *Radcliff Finance* the Supreme Court expressly stated that the *Knox City* holding applied to used as well as to new automobiles. *See Radcliff Finance*, 323 S.W.2d at 595 ("Section 33 . . . obviously refers to a transfer by the owner designated in a Texas certificate of title, and the section is not applicable when such a title has not been, and is not required to be, applied for or obtained. . . [A] dealer is not required . . . to apply for a certificate of title before disposing of a vehicle. . . The holding of the *Knox City* case on that question applies to used as well as to new cars."). Although neither the Bank nor the intermediate Texas court opinions on which the Bank relies reference these Texas Supreme Court cases, the court concludes that they are dispositive of this issue.[19]

The parties stipulated that Dota "at all times relevant to this proceeding was a

---

**18.** The first certificate of title act was passed in 1939, by Acts 1939, 46th Leg. Ch. 4, H.B. 407, p. 602, Vernon's Annotated Penal Code, article 1436–1. In 1973 this article was transferred by authority of § 5 of Acts 1973, 63rd Leg., p. 995, Ch. 399 (enacting the new Texas Penal Code) to Texas Revised Civil Statutes Annotated art. 6687–1. In 1995 this article was repealed by Acts 1995, 74th Leg., Ch. 165, § 24(a), at which time the Texas Transportation Code was enacted by Acts 1995, 74th Leg., Ch. 165, § 1.

**19.** The cases cited by the Bank in support of its argument that Lundy's distinction between "dealer" and "owner" is "novel" and "flies in the face of the very reason the [COTA] was enacted" (Brief of Appellee, Docket Entry No. 6, p. 6) are either cases in which the distinction between "dealer" and "owner" was not considered, or cases that do not support the Bank's position. *See e.g., Pfluger v. Colquitt*, 620 S.W.2d 739 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.), *Morey v. Page*, 802 S.W.2d 779 (Tex.Civ.App.—Dallas 1990, no writ), and *Apeco*, 506 S.W.2d at 716. In both *Pfluger* and *Morey* owners who entrusted their auto-

mobiles to merchants without transferring the certificates of title sought to recover the automobiles from third parties to whom the merchants sold the automobiles without paying the owners. Without considering the distinction between "dealer" and "owner," both the *Pfluger* and *Morey* courts ruled in favor of the owners, reasoning that although the merchants had the power to transfer all rights of the owners who had entrusted their automobiles to them, the merchants' sales to the third parties were void because the owners had not transferred the certificates of title to the merchants. The *Morey* court explained its reasoning as follows: "[I]f the owner of a vehicle has no power to dispose of the vehicle without a proper transfer of the certificate of title, then no merchant to whom the vehicle is entrusted has the power to dispose of the vehicle without a proper transfer of the certificate." *Morey*, 802 S.W.2d at 784, *citing Pfluger*, 620 S.W.2d at 741. *Pfluger* and *Morey* are distinguishable from this case because the parties stipulated that the certificate of title to the Silverado had been properly transferred to Dota. *See* Joint Stipulation, Item 5 in ROA, ¶ 7, "The vehicle in question was a used vehi-

licensed motor vehicle dealer, holding general distinguishing number P37906, issued under Chapter 503 of the Texas Motor Vehicle Commission Code. Debtor [Dota] was in the business of selling used cars to the public."[20] Because the parties stipulated that Dota was a "dealer . . . in the business of selling used cars to the public," and because the COTA's definition of "owner" expressly excludes "dealers," the court concludes that Dota was not an "owner" for purposes of § 501.071. Because § 501.071 of the COTA mandates that "[a] motor vehicle may not be the subject of a subsequent sale unless the **owner** designated in the certificate of title transfers the certificate of title at the time of the sale" (emphasis added), the court also concludes that § 501.071 did not apply to Dota's sale of the Silverado to Lundy. *See Knox City*, 174 S.W.2d at 485 (dealers . . . need not secure a certificate of title as a condition precedent to the right to transfer title to vehicles); *Automotive Dealers*, 229 S.W.2d at 788 ("Section 33 [Predecessor of § 501.071] which covers a subsequent sale of a motor vehicle, applies only to 'owners', thus excluding its application to dealers."); *Radcliff Finance*, 323 S.W.2d at 595 ("Section 33 [Predecessor of § 501.071] refers to a transfer by the owner designated in a Texas certificate of title, and the section is not applicable when such a title has not been, and is not required to be, applied for or obtained. . . [A] dealer is not required . . . to apply for a certificate of title before disposing of a vehicle. . . The holding of the *Knox City* case on that question applies to used as well as to new cars.").

### 3. *Voidance Power of § 501.073*

Section 501.073 provides: "A sale made in violation of this chapter is void and title may not pass until the requirements of this chapter are satisfied." Tex. Trans. Code § 501.073. The Bank argues that Dota's sale of the Silverado to Lundy is void because Dota failed to transfer the Silverado's certificate of title to Lundy at the time of sale as required by § 501.071. Because the court has already concluded that § 501.071 is not applicable to the facts of this case, the court also concludes that Dota's sale of the Silverado to Lundy was not void because of the parties' failure to comply with § 501.071.

### B. **Texas Business & Commerce Code (Code)**[21]

Asserting that it had a perfected security interest in Dota's inventory, the Bank argues that:

> definition of "dealer" to persons who purchase new motor vehicles for sale, and by its application of § 501.0234 "Duty of Vehicle Dealer on Sale of Certain Vehicles" to both first and subsequent sales. *See* § 501.001(2) ("'Dealer' means a person who purchases motor vehicles for sale at retail."), and § 501.0234 ("Duty of Vehicle Dealer on Sale of Certain Vehicles (a) A person who sells at the first or a subsequent sale a motor vehicle and who holds a general distinguishing number . . .").

20. Joint Stipulation, Item 5 in ROA, ¶ 4.

21. Because the facts of this case occurred in November of 2000, prior to the effective date of the new version of the Texas Business and

cle, for which a Certificate of Title had already been issued;" and ¶ 8, "The Certificate of Title was endorsed to Debtor [Dota] on the reverse side thereof. The First National Bank of El Campo is not shown as a lien holder on the Certificate of Title."

In *Apeco*, 506 S.W.2d at 715–716, the court expressly stated that "[a]n 'owner' . . . means a person other than a . . . dealer," and expressly distinguished the two terms by declaring "Bishop was a 'dealer', not an 'owner'." Because the *Apeco* case concerned a first sale of a new car, the Bank argues that the distinction between owners and dealers recognized in *Apeco* is limited to situations involving first sales of new cars. The Bank's argument is belied both by the COTA's failure to limit its

Under Texas law a floor plan financier's valid and perfected security interest in a used car dealer's inventory is not cut off by the dealer's purported sale to a third party where no title is passed to the third party in accordance with the Texas Certificate of Title Act. In this situation, there is no conflict between the Texas Business and Commerce Code and the Texas Certificate of Title Act. Since no sale occurs or is void under the act, the purported purchaser cannot claim to be a buyer in ordinary course. The age old question, "Would you buy a used car from this man?" can be partially answered in Texas—not unless the certificate of title is transferred at the time of sale.[22]

In support of its argument the Bank cites the Fifth Circuit's opinion in *Bank One,* 219 F.3d at 494, and several intermediate Texas court decisions, including: *Ballard v. Associates Investment Co.,* 368 S.W.2d 232 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.), *Clade v. National City Bank of Waco,* 229 S.W.2d 815 (Tex.Civ.App.—Waco 1950, writ ref'd n.r.e.), and *Associates Investment Co. v. National City Bank of Waco,* 231 S.W.2d 661 (Tex.Civ.App.—Waco 1950).[23]

Arguing that he did everything the COTA required him to do at the time of sale to apply for and obtain the certificate of title, Lundy argues that his ownership interest in the Silverado is superior to the Bank's security interest because under the Texas Business and Commerce Code title to goods passes to a buyer on physical delivery even if a document of title is to be delivered at a different time and place.

*See* Tex. Bus. & Comm.Code § 2.401(b) ("title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place").[24]

1. *The Bank's Security Interest*

■ Although the Bank argues that it "could only protect its security interest in debtor's [Dota's] inventory by filing a U.C.C. financing statement *and by retaining the titles to Dota's inventory,*"[25] neither the Code nor the COTA recognizes retention of certificates of title as a valid means for perfecting or protecting a security interest in motor vehicles held as inventory.

The perfection of security interests in motor vehicles is governed by § 501.111 of the COTA, which provides:

(a) Except as provided by Subsection (b), a person may perfect a security interest in a motor vehicle that is the subject of a first or subsequent sale only by recording the security interest on the certificate of title as provided by this chapter.

(b) A person may perfect a security interest in a motor vehicle held as inventory by a person in the business of selling motor vehicles only by complying with Chapter 9, Business & Commerce Code.

Tex. Trans. Code § 501.111. Because the parties stipulated that Dota was in the

---

Commerce Code on July 1, 2001, the prior version of the Code applies to this case and all cites herein are to that version, with references to the new sections where appropriate.

**22.** Brief of Appellee, Docket Entry No. 6, at p. 8.

**23.** *Id.* at pp. 7–8.

**24.** Brief of Appellant, Docket Entry No. 5, at pp. 10–11.

**25.** *Id.* at pp. 5–6 (emphasis added).

business of selling motor vehicles, the Bank could only perfect a security interest in Dota's inventory by complying with the provisions of Chapter 9 of the Code. Chapter 9 of the Code provides that a security interest in inventory can be perfected only by filing a financing statement at the Secretary of State's office. *See* Texas Business and Commerce Code § 9.302(a),(c) (1999 Cumulative Annual Pocket Part).[26] *See also Gulf Coast State Bank v. Nelms,* 525 S.W.2d 866, 868 (Tex.1975) ("With its effective date in 1966, the Texas Business and Commerce Code preserved the certificate of title system for *perfecting* security interests in motor vehicles except for vehicles held as inventory. Tex. Bus. & Comm.Code § 9.302(c) & (d)." (emphasis in original)).

While § 501.027(b) of the COTA accords lienholders whose liens are perfected by recording on the certificates of title pursuant to § 501.111(a) the right to retain the original certificates of title in their possession until the lien is retired, the COTA does not accord lienholders whose liens are on inventory and, therefore, not recorded on the certificates of title, the same right. *See* Tex. Trans. Code § 501.027(b) ("... If a lien is not disclosed on the application, the department shall mark the certificate 'original' and send it ... to the applicant at the address provided on the application. If a lien is disclosed on the application, the department shall: (1) issue the certificate of title in duplicate; (2) mark one certificate of title 'original' and send it ... to the first lienholder as disclosed on the application; and (3) mark the second certificate of title 'duplicate original' and send it ... to the applicant"). Because neither the Code nor the COTA support the Bank's assertion that it "could only protect its security interest in Dota's inventory by filing a

financing statement *and by retaining the titles to Dota's inventory,*" [27] the court concludes that the Bank had no statutory right to retain the certificates of title to the vehicles held by Dota as inventory.

Because the parties stipulated that the Bank perfected its security interest in Dota's inventory by filing a financing statement at the Secretary of State's office, and because neither the Code nor the COTA recognizes retention of certificates of title as a valid means for perfecting a security interest in motor vehicles held as inventory, the court concludes that the Bank held a perfected security interest in Dota's inventory of used vehicles pursuant to its filed financing statement, but that the Bank does not hold a perfected security interest in Dota's inventory pursuant to the certificates of title held in its possession. *See Apeco,* 506 S.W.2d at 717 ("In Texas, a security interest in a vehicle may be perfected in two ways. If the vehicle is part of inventory, the security interest must be filed with the Secretary of State... In all other cases, the security interest must be noted on the certificate of title."); *Associates Discount Corp. v. Rattan Chevrolet,* 462 S.W.2d 546, 549 (Tex. 1970) ("a lien on a motor vehicle that is not inventory may be perfected only by indicating the security interest on a certificate of title or application therefor, but ... a security interest in a motor vehicle that is inventory may be perfected only by complying with the filing provisions of Chapter 9.").

### 2. *Lundy's Status as a Buyer in the Ordinary Course*

Citing § 1.201(9) and § 9.307(a) of the Code, Lundy asserts that he is a buyer in the ordinary course of business who takes

---

26. Now § 9.320.

27. Brief of Appellee, Docket Entry No. 6, at pp. 5–6 (emphasis added).

free and clear of the bank's security interest.[28] *See* Tex. Bus. & Comm.Code § 1.201(9) (Vernon 1991) (" 'Buyer in the ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind."). *See also* Tex. Bus. & Comm.Code § 9.307(a) (Vernon 1991) ("[A] buyer in the ordinary course of business ... takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.").[29] Citing *Bank One*, 219 F.3d at 494, § 501.071 of the COTA, and a number of intermediate Texas court decisions interpreting the COTA, including *Ballard*, 368 S.W.2d at 232, *Clade*, 229 S.W.2d at 815, and *Associates Investment*, 231 S.W.2d at 661, the Bank argues that Lundy cannot be a buyer in the ordinary course of business because he purchased the Silverado at a "subsequent sale" without receiving the certificate of title at the time of sale as required by § 501.071 of the COTA.[30] Lundy counters he did everything the COTA required him to do at the time of sale to apply for and receive the certificate of title.[31]

 Determining whether a person is a buyer in the ordinary course of business is a mixed question of law and fact. *Rattan Chevrolet*, 462 S.W.2d at 550 (whether a sale is in ordinary course is a mixed question of law and fact). A buyer in the ordinary course of business is one who, in good faith, and without knowledge that the sale is in violation of the ownership rights or security interest of a third party, buys from a person in the business of selling goods of that kind. Tex. Bus. & Comm. Code § 1.201(9). The Code defines "buyer" as "a person who buys or contracts to buy goods." Tex. Bus. & Comm.Code § 2.103(a)(1)(Vernon 1991). The Code defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." Tex. Bus. & Comm. Code § 2.105(a) (Vernon 1991). "[T]he broad definition of 'goods' contained in § 2.105 clearly includes motor vehicles." *Rattan Chevrolet*, 462 S.W.2d at 549 (Tex. 1970).

The court is not persuaded by the Bank's argument that Lundy cannot be a buyer in the ordinary course of business because he failed to receive the certificate of title to the Silverado at the time of sale as required by § 501.071 of the COTA. In addition to the reasons set forth in the preceding sections of this opinion, the Bank's assertion that Lundy should have received the certificate of title to the Silverado at the time of sale misstates the COTA's requirements for transfer of a certificate of title pursuant to a subsequent sale by a licensed Texas dealer, and the parties stipulated that Lundy did everything required by law to obtain the certificate of title to the Silverado.[32]

(a) Dota's Duty as a Dealer

 The precise manner in which the certificate of title to a used vehicle is to be

---

28. Brief of Appellant, Docket Entry No. 5, at pp. 8–9.

29. Now § 9.320.

30. Brief of Appellee, Docket Entry No. 6, at pp. 7–8.

31. Brief of Appellant, Docket Entry No. 5, at pp. 8–10.

32. Joint Stipulation, Item 5 in ROA, ¶ 5: "... Plaintiff performed all actions required by law of purchasers of vehicles from dealers to obtain the Certificate of Title for the 1999 Chevrolet pickup truck."

transferred pursuant to a "subsequent sale" depends on whether the seller is a dealer or an owner.[33]

Licensed motor vehicle dealers are subject to the same duties regarding transfer of certificates of title regardless of whether the sale at issue is the "first sale" of a new vehicle or a "subsequent sale" of a used vehicle. In either case, § 501.0234 imposes the following duties on a licensed dealer:

**Duty of Vehicle Dealer on Sale of Certain Vehicles**

(a) A person who sells at a first or a subsequent sale a motor vehicle and who holds a general distinguishing number issued under Chapter 503 or the Texas Motor Vehicle Commission Code ... shall:

(1) in the time and manner provided by law, apply, in the name of the purchaser of the vehicle, for the registration of the vehicle and a certificate of title for the vehicle and file with the appropriate designated agent each document necessary to transfer title to and register the vehicle; and at the same time

(2) remit any required motor vehicle sales tax.

. . . . .

(c) Each duty imposed by this section on the seller of a motor vehicle is solely that of the seller.

Tex. Trans. Code § 501.0234. Section 501.0234's requirement that licensed dealers apply for the certificate of title and registration in the name of the purchaser is reiterated both in the Texas Administrative Code and in the *Motor Vehicle Title Manual* prepared by the Vehicle Titles and Registration Division of the Texas Department of Transportation. *See* Tex. Admin. Code § 111.15(c) ("Title assignments. All certificates of title, manufacturer's certificates, or other evidence of ownership for vehicles offered for sale or which have been acquired by a dealer must be properly assigned into the dealer's name. A dealer must provide the purchaser with the receipt for application for certificate of title issued by the county tax assessor-collector within 20 working days of the date of sale of any vehicle to be titled or registered in the state of Texas."); *Motor Vehicle Title Manual* (ed.1999), p. 2 ¶ II ("Upon the sale of a motor vehicle, a licensed Texas dealer is required to complete and file all documents necessary to transfer title to the motor vehicle and/or register the motor vehicle in the name of the purchaser."); and p. 51 ¶ IV ("Effective January 1, 1996, all licensed Texas dealers are required, upon the sale of a vehicle, ... to file with the appropriate County Tax Assessor–Collector all documents necessary to transfer title to the vehicle and register the vehicle in the name of the purchaser.").[34]

Section 501.0234 made Dota, a licensed Texas dealer, responsible for applying for a certificate of title for the Silverado in Lundy's name, and for filing each document necessary to transfer title to and register the Silverado in Lundy's name. Because Dota could not fulfill the requirements of this section if he in fact transferred the certificate of title to Lundy at

---

**33.** The duties imposed on owners are those included in Tex. Trans. Code § 501.022, and § 501.071 discussed above.

**34.** See also "Frequently Asked Questions" section of Texas Department of Transportation's internet site: "Question: I just bought ... a car. How do I transfer title? ... If you buy a vehicle from a licensed Texas dealer, the dealer is required to complete all the papers that are necessary to title and register the vehicle in your name. The dealer must also file them with the county tax assessor-collector's office within 20 days of the date you bought the vehicle."

the time of sale, the Bank's assertion that the sale to Lundy is void because Dota did not transfer the certificate of title to Lundy at the time of sale misstates Texas law. Because the process of applying for and obtaining the certificate of title and registration in a purchaser's name takes time, § 503.063 of the Texas Transportation Code allows the dealer to issue to the purchaser a temporary cardboard buyer's tag, which under § 501.022(d) exempts the owner from applying for a certificate of title. *See* Tex. Trans. Code § 503.063("(a) ... a dealer may issue to a person who buys an unregistered vehicle one temporary cardboard buyer's tag for the vehicle. (b) ... the buyer's tag is valid for the operation of the vehicle until the earlier of: (1) the date on which the vehicle is registered; or (2) the 21st day after the date of purchase); and § 501.022(c)-(d)((c) The owner of a motor vehicle that is required to be registered in this state must apply for a certificate of title ... (d) Subsection (c) does not apply to a motor vehicle operated on a public highway in this state with a ... buyer's temporary cardboard tag attached to the vehicle as provided by Chapter 503."). *See also* Tex. Admin. Code ¶ 111.15(c)(allowing dealer 20 working days to provide purchaser with the receipt for application for certificate of title issued by the county tax assessor-collector, *i.e.,* a title receipt).

### (b) Lundy's Duty as a Buyer

Previous versions of the COTA contained a § 52 that made it unlawful to buy or acquire any title other than a lien in a motor vehicle without then and there demanding of the seller—regardless of whether the seller was a dealer or an owner—the registration receipt and certificate of title covering the vehicle. *See* Vernon's Penal Code Annotated art. 1436–1, § 52 (1948) ("It shall hereafter be unlawful to buy or acquire any title other than a lien in a motor vehicle registered or licensed in this State without then and there demanding of the proposed seller the registration receipt and certificate of title covering the particular motor vehicle which shall, upon consummation of the purchase, be transferred upon such form as may be provided by the Department."). In 1967 § 52 was repealed by Acts 1967, 60th Leg., p. 1035, ch. 454, § 1, eff. Aug. 28, 1967. *See* Tex. Civ. Stat. Ann. art. 6687–1 § 52 (Vernon 1977)(noting repeal). The Bank's reliance on cases such as *Ballard,* 368 S.W.2d at 234, *Clade,* 229 S.W.2d at 815, and *Associates Investment,* 231 S.W.2d at 661, as support for its argument that Dota's sale of the Silverado to Lundy was void because Lundy failed to receive the certificate of title at the time of sale is misplaced because the decisions in those cases turned—at least in part—on the now repealed § 52.

The Joint Stipulation executed by the parties establishes, as a matter of law, both that Lundy fulfilled all the duties that the COTA imposes upon buyers purchasing used cars from licensed Texas dealers, and that Lundy was a buyer in the ordinary course of business because he purchased the Silverado in good faith, without knowledge that the sale violated the ownership rights or security interest of a third party, from a person in the business of selling goods of that kind:

3. ... Contemporaneous with the execution of each Motor Vehicle Purchase Order, Plaintiff executed an Application for Texas Certificate of Title which was retained by Debtor [Dota] for the purpose of processing issuance of a new Certificate of Title.

4. Debtor [Dota], at all times relevant to this proceeding, was a licensed motor vehicle dealer, holding general distinguishing number P37906, issued under Chapter 503 of the Texas Motor Vehicle

Commission Code. Debtor [Dota] was in the business of selling used cars to the public.

5. Plaintiff purchased the vehicles in good faith and without knowledge that the sale to him was in violation of the ownership rights or security interests of First National Bank of El Campo, or any other third party, in the vehicles. Debtor [Dota] was a person in the business of selling vehicles of the kind purchased by Plaintiff and Plaintiff performed all actions required by law of purchasers of vehicles from dealers to obtain the Certificate of Title for the 1999 Chevrolet pickup truck.[35]

The parties do not dispute that a buyer in the ordinary course of business takes free of a security interest created by the seller, even if that interest is perfected and even if the buyer knows of its existence. Tex. Bus. & Comm.Code § 9.307(a)(Vernon 1991).[36] *See also Matter of Gary Aircraft Corp.*, 681 F.2d 365, 372 (5th Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1366 (1983).

## V. *Conclusions*

For the reasons set forth above, the court concludes that the bankruptcy court erred in concluding that Tex. Trans. Code § 501.071 applied to the sale of the Silverado, that the Bankruptcy Court erred in concluding that under Tex. Trans. Code § 501.071 the sale of the Silverado was not valid unless accompanied by transfer of the certificate of title, that the bankruptcy court erred in concluding that Lundy was not a buyer in the ordinary course of business who took the Silverado free of the security interest that the Bank held in Dota's inventory, and that the bankruptcy court erred in failing to enter judgement in Lundy's favor for declaratory judgment and turnover. Accordingly, the Judgment of the bankruptcy court is **REVERSED,** and this case is **REMANDED** to the bankruptcy court for the entry of judgment in favor of Lundy on his claims for declaratory judgment and turnover and for consideration of Lundy's claim for conversion in accordance with this Opinion and Order.

---

**35.** Joint Stipulation, Item 5 in ROA, ¶¶ 3–5.

**36.** Now § 9.320.