

**NUMBER 13-07-632-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ROY CLARENCE EISENBACH,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

**On appeal from the 51st District Court of Tom Green County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Justice Benavides**

Appellant, Roy Clarence Eisenbach, was indicted for theft of a motor vehicle and for unauthorized use of a motor vehicle. *See* TEX. PENAL CODE ANN. § 31.03 (Vernon Supp. 2007); *id.* § 31.07 (Vernon 2006). A bench trial commenced. After the close of the State's evidence, the district court dismissed count two of the indictment, alleging theft, and acquitted Eisenbach of the charge. The trial court, however, convicted Eisenbach of

unauthorized use of a motor vehicle, sentenced him to 735 days' imprisonment, and ordered a $750.00 fine. The court then suspended the prison sentence and placed Eisenbach on community supervision for three years. By a single issue, Eisenbach argues that the evidence is legally and factually insufficient to support the trial court's finding that Eisenbach did not have a greater right to possession of the vehicle than the alleged owner, as required to show unauthorized use. We affirm.

## I. Background

Eisenbach was a car salesman who sold cars under a "floor-plan agreement." Under this agreement, Jim Hall would finance Eisenbach's purchase of a car for resale. According to Hall's testimony, Eisenbach would approach him with a proposed car purchase. Hall would inspect the vehicle to ensure that it was in good condition. Hall would then give Eisenbach money to purchase the car. Eisenbach was required to bring Hall the title to the car, which would be left "open." In other words, the purchaser or dealer reassignment blanks would be left empty. According to Hall, at that point, he owned the car. Eisenbach was authorized to place the car for sale at Alternative Auto Sales, a used-car dealership owned by James Mann. Eisenbach would sell the car using Mann's dealer license.

Under the agreement, Eisenbach would sell the car, pay Hall the amount Hall spent to purchase the car, plus a fee and interest, and keep the excess profit. Hall would then give Eisenbach the title to the car so that the purchaser's name could be put on the title. According to Hall, Eisenbach was not allowed to sell the cars under an installment plan. Rather, when Eisenbach sold a car, he was required to pay Hall off in full. Only then was

2

Eisenbach allowed to release the car to the buyer's possession. Hall testified that he periodically inspected Alternative Auto Sales to verify that all the cars he had purchased were on the lot.

In 2005, Eisenbach approached Hall about purchasing a Cadillac Concourse. Hall testified that he paid $5,500.00 for the Cadillac, and Eisenbach provided Hall with the title. The title was admitted into evidence. Eisenbach's name is not listed anywhere on the title. Hall testified that at the time he received the title, it was left "open," meaning that no purchaser was filled in, so that the title was "negotiable."

Richard Havelock-Bailie testified that he went to Alternative Auto Sales in 2005 and negotiated with Eisenbach for the purchase of the Cadillac. He testified that there was no written agreement for the sale. Bailie testified that he agreed to pay Eisenbach a $5,000.00 down payment for the car by making payments of $100.00 per week. Bailie stated that he traded in a truck and a dolly used to tow cars as part of the down payment. Eisenbach allowed Bailie to take possession of the car. Bailie testified that Eisenbach stated that he would occasionally need to take the car to show Hall its condition, given that Hall was financing the purchase. Bailie testified that Eisenbach never told him that if he missed a payment, Eisenbach would repossess the car.

Bailie made payments beginning in April 2005 and purchased insurance for the car. Bailie testified that he made weekly payments throughout April, May, and June. He stated that on weeks that he did not have enough money to make a payment, Eisenbach allowed him to double the payment the next week. He further stated that on June 16, 2005, his wife made a payment of $450 because he knew he would not be able to make another payment that month.

3

On July 9, 2005, Bailie testified that when he woke up in the morning, the Cadillac was missing from his driveway. Bailie testified that he had not given Eisenbach permission to take the car. When he spoke to Eisenbach later that day, Eisenbach informed him that he had taken the car and had hit a deer in El Dorado, Texas. Hall testified that the car was a total loss. Bailie made a claim on his insurance policy and, after learning that Hall held the title to the car, made Hall the loss payee on the insurance policy. Hall and Bailie divided up the proceeds from the insurance.

Eisenbach was indicted for theft and for unauthorized use of a motor vehicle. After the State rested, the trial court acquitted Eisenbach of the theft charge. Eisenbach's nephew testified on his behalf. He testified that he assisted Eisenbach with repossessing the vehicle. He testified that after repossessing the vehicle, he brought the car to Alternative Auto Sales.

The trial court convicted Eisenbach of unauthorized use of the vehicle, sentenced him to 735 days' imprisonment, and ordered a $750.00 fine. The court then suspended the prison sentence and placed Eisenbach on community supervision for three years. This appeal ensued.

## II. Standards of Review

By a single issue, Eisenbach argues that the evidence is legally and factually insufficient to support his conviction. To assess whether the evidence supporting a verdict is legally sufficient, we consider all the evidence in the record in the light most favorable to the verdict and determine whether a rational trier of fact could have found the defendant guilty of all the elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19

4

(1979)); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003).

In contrast, three basic rules guide our inquiry when conducting a factual-sufficiency analysis. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008). "First, the court of appeals must be cognizant . . . that a [fact-finder] has already passed on the facts and must give due deference to the [fact-finder's] determinations." *Id.* at 705. While we may not agree with the ultimate decision, we must "afford the appropriate deference in order to avoid substituting [our] judgment for that of the [fact-finder]." *Id.* Second, if we determine that the evidence is factually insufficient, we must explain precisely why. *Id.* Third, we must "review all of the evidence in a neutral light, as opposed to a legal-sufficiency review in which the evidence is viewed in the light most favorable to the verdict." *Id.* We will reverse for factual insufficiency of the evidence if "the evidence supporting the verdict, though legally sufficient, is nonetheless too weak to support it," or if, "when considering conflicting evidence, the . . . verdict is against the great weight and preponderance of the evidence." *Id.*

### III. Analysis

A person commits the offense of unauthorized use of a motor vehicle if he intentionally or knowingly operates another's motor-propelled vehicle without the owner's consent. TEX. PENAL CODE ANN. § 31.07. An "owner" is defined as "a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." *Id.* § 1.07(a)(35)(A) (Vernon 2003). Eisenbach concedes that he did not have permission to use the vehicle on the night it was taken from Bailie's driveway. He argues, however, that the evidence was legally and factually

5

insufficient to prove that Bailie had a greater right to possess the vehicle because Bailie defaulted on his payments, and, therefore, Eisenbach had a right to repossess the vehicle. We disagree.

A vehicle dealer can validly sell a vehicle without also transferring a certificate of title at the time of the sale. *In re Dota*, 288 B.R. 448, 455-58 (S.D. Tex. 2003). "Unless otherwise explicitly agreed title [to goods] passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place . . . ." *See* TEX. BUS. & COMM. CODE ANN. § 2.401(b) (Vernon 1994). "Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." *Id.* § 2.401(a).

A "secured party" may repossess collateral in the possession of a buyer after a default if repossession is obtained through judicial process or if repossession can proceed without a breach of the peace. TEX. BUS. & COMM. CODE ANN. § 9.609 (Vernon 2002). A "secured party" is defined as "a person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding." *Id.* § 9.102(73)(A).

In this case, Hall testified that he purchased the vehicle and allowed Eisenbach to sell it, pay him interest and a fee, and retain the excess. Eisenbach concedes that Hall was the original owner of the vehicle and that he merely had authority to sell the vehicle on Hall's behalf. Eisenbach further concedes that he sold the vehicle to Bailie, although he argues that the parties agreed that title would not be transferred until Bailie finished

6

paying the "deposit." At the time of the sale, regardless of whether title was actually signed over to Bailie at the same time, Bailie became the owner of the vehicle. TEX. BUS. & COMM. CODE ANN. § 2.401(b). At most, Eisenbach's requirement of further payments from Bailie created a security interest.

Eisenbach argues that he had a greater right to possession of the vehicle than Bailie because Bailie had defaulted on his payments, and therefore, Eisenbach had the right to repossess the car as long as he did not breach the peace. There is no evidence that Eisenbach was ever an owner of the vehicle or that he had the power to retain a security interest in his own favor. *Id.* § 9.102(73)(A). Thus, Eisenbach was not a "secured party" entitled to repossess the vehicle. *Id.* At most, a security interest was only created in Hall's favor.

Hall testified that Eisenbach was not authorized to repossess the car on his behalf—in fact, Hall testified that Eisenbach was never authorized to sell cars on an installment payment plan. Eisenbach concedes in his brief that he "did not follow the instructions of Hall when he gave Richard Havelock-Bailie the car to use." Eisenbach, therefore, did not have authority, as Hall's agent, to repossess the car after it had been sold to a buyer. Eisenbach was never authorized to give possession of the car to Bailie in the first place in the absence of a full payment for the car.

Reviewing the evidence in the light most favorable to the verdict, a rational fact-finder could have found beyond a reasonable doubt that Eisenbach did not have a greater right to possess the vehicle than did Bailie, the car's owner. *See Hooper*, 214 S.W.3d at 13. Furthermore, viewing the evidence in a neutral light, we cannot say that "the evidence supporting the verdict, though legally sufficient, is nonetheless too weak to support it" or

7

that "the jury's verdict is against the great weight and preponderance of the evidence."

*Lancon*, 253 S.W.3d at 704. Eisenbach's sole issue is overruled.

## IV.  Conclusion

Having overruled Eisenbach's sole issue, we affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish. TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this the 28th day of August, 2008.